IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LAUREL WOOD HOMES LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 06-734C<br>(Chief Judge Damich) |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss concerning Count 1 of Plaintiff's First Amended Complaint.

STATEMENT OF THE ISSUE

Whether Defendant's initial denial of properly submitted and properly priced invoices for vandalism damages that have now been paid in full by the Government constituted an objectively discernible dispute among the parties.

STATEMENT OF THE CASE

For purposes of this Opposition, Plaintiff accepts and refers to Defendant's statement of the case. Plaintiff adds that Defendant, at no time, raised any question about the actual amount being claimed for repair of vandalism damages.

ARGUMENT

As noted in Defendant's Statement of the Case, "[f]rom the execution of the Inlease [in 1988], Laurelwood [Plaintiff] has been submitting invoices to the Navy for repair of vandalism to the housing, and the Navy has been paying those claims." Defendant's Motion to Dismiss at 2. In other words, for over 18 years there was no dispute about the Navy's liability for vandalism damage. Such a position was entirely

consistent with the 1993 decision in North Star Alaska Housing Corp. v. United States, 30 Fed.Cl. 259 (1993) in which the court stated, in analyzing a similar Section 801 Housing Lease where the housing is inside the military base's gates, with regard to the government's liability for vandalism damage:

> Defendant maintains that plaintiff has not witnessed the vandalism as it occurs. The court recognizes, however, that if the only individuals on Fort Wainwright are defendant, its agents, occupants, and their agents (i.e., licensees or invitees), then the actual "identity" of the perpetrator is irrelevant for purposes of assessing responsibility for repair payment.
>
> Defendant also asserts that individuals may gain access to Fort Wainwright through two pedestrian gates, "in the vicinity of the section 801 housing project which are unguarded and open for the convenience of school students and other pedestrians." Defendant contends that individuals committing vandalism could be entering Fort Wainwright through these gates. Therefore, these people are trespassers and would not be "agents" of the government or the occupants.
>
> Even though Fort Wainwright is a restricted guarded post, defendant deliberately kept two pedestrian gates open for school children and pedestrians. Therefore, the school children and pedestrians are not trespassers who intentionally enter Fort Wainwright without consent or privilege. Instead, they are licensees who enter Fort Wainwright for their own purposes, with the permission, or at the very least the implied consent, of defendant. Again, any damage these individuals cause is attributable to defendant.
>
> Furthermore, defendant is still responsible even if people are slipping through the unguarded gates at Fort Wainwright only to commit acts of vandalism. Because defendant chose to leave these gates unguarded, it assumed the risk that acts of vandalism would be committed by malicious individuals. Proctor Wholesale Co. v. United States, 215 Ct.Cl. 1049, 578 F.2d 1388 (1978) (taking "no action" to restrain access by third persons to property was "conducive to vandalism," and party held liable for costs); cf. Union Petroleum Corp. v. United States, 228 Ct.Cl. 54, 73, 651 F.2d 734, 745 (1981) (taking sufficient steps to "forestall vandalism" avoids liability). Plaintiff did not participate in the government's decision to leave an area of the base open, and cannot prevent unwelcome visitors from entering the unguarded gates. Therefore, the repair costs for damage caused by these individuals is also defendant's responsibility.
>
> The court cannot fault plaintiff for something beyond its control. Whether or not plaintiff actually witnessed the malicious acts, it is nearly impossible that they were committed by anyone who is not either an occupant, or an occupant's guest or an agent of the government. Plaintiff has neither say nor authority to make

> security decisions for Fort Wainwright. Defendant chose to leave an area of the base open and unguarded, and, therefore, must assume the consequences of this decision. Thus, defendant must reimburse plaintiff for the cost of repairs of vandalism at Fort Wainwright.

Id., at 270-71 (footnotes omitted).

In order for Defendant to properly deny plaintiff Prompt Payment Act interest, Defendant must show that there was an "objectively discernible dispute." Information Systems and Networks Corp., ASBCA No. 46119, 96-1 BCA 28,059 at 140, 121. *See also* Arkansas Best Freight Systems, Inc. v. United States, 20 Cl. Ct. 776 (1990). In this instance, there was no objectively discernible dispute nor does Defendant's motion address this issue. Plaintiff had properly submitted invoices for the repair of vandalism damage for which the Government had been and is liable. There was no dispute about the amount claimed, and by the Government now having paid in full the amount of the invoices submitted as well as revoking its contracting officer's decision with regard to seeking repayment of previously paid vandalism damages, the Government admits that there was no actual discernible dispute. The Government cannot escape liability for Prompt Payment Act interest simply by having a contracting officer improperly and without a reasonable basis deny payment of proper invoices and thereby force the contractor to submit a Contract Disputes Act claim and wait for a final decision without the benefit of accruing interest damages.

THEREFORE, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss with regard to Claim I of Plaintiff's Amended Complaint.

Respectfully submitted,

s/William A. Shook
William A. Shook
Kirkpatrick & Lockhart
Preston Gates Ellis LLP

1735 New York Avenue NW
Suite 500
Washington, D.C. 20006
Telephone 202 661 6256
Facsimile 202 331 1024
Email: bill.shook@klgates.com

Date: April 30, 2007