# OUTLEASE

## PART I


| | |
|---|---|
| LEASED PROPERTY | SECTION A - PAGE 1 |
| TERM | SECTION B - PAGE 1 |
| FAIR MARKET RENT | SECTION C - PAGE 1 |
| USE | SECTION D - PAGE 2 |
| NATIONAL EMERGENCY TERMINATION | SECTION E - PAGE 2 |
| DEFAULT BY LESSEE | SECTION F.1.a. - PAGE 2 |
| TERMINATION FOR CASUALTY | SECTION F2 - PAGE 3 |
| TERMINATION BY LESSEE | SECTION F3 - PAGE 3 |
| CONSTRUCTION OF IMPROVEMENTS | SECTION G - PAGE 4 |
| TITLE TO IMPROVEMENTS | SECTION H - PAGE 4 |
| INSURANCE | SECTION H - PAGE 4 |
| GENERAL MAINTENANCE OBLIGATIONS | SECTION J - PAGE 5 |


## PART II


| | |
|---|---|
| RISK OF LOSS - INSURANCE | SECTION A - PAGE 7 |
| REPRESENTATIONS | SECTION B - PAGE 8 |
| SUBJ TO EXISTING & FUTURE EASEM | SECTION C - PAGE 9 |
| INDEMNIFICATION BY LESSEE | SECTION D - PAGE 9 |
| UTILITIES AND SERVICES | SECTION E - PAGE 9 |
| MORTGAGE OF PREMISES | SECTION F - PAGE 10 |
| RIGHTS AND DUTIES OF MORTGAGEES | SECTION G - PAGE 11 |
| ACCESS | SECTION H - PAGE 13 |
| STATE AND LOCAL TAXES | SECTION I - PAGE 13 |
| DISPUTES | SECTION J - PAGE 13,14 & 15 |
| COVENANT AGAINST CONTINGENT FEES | SECTION K - PAGE 15 |
| OFFICIALS NOT TO BENEFIT | SECTION L - PAGE 15 |
| FAILURE OF GOV'T TO INSIST ON COMPLIANCE | SECTION M - PAGE 15 |
| ASSIGNMENT OR SUBLETTING | SECTION N - PAGE 16 |
| LABOR PROVISIONS | SECTION O - PAGE 16 |
| CONVICT LABOR | SECTION O.2. - PAGE 17 |
| CONTRACT WORK HOURSSTANDARDS ACT | SECTION O.3. - PAGE 17 |
| DAVIS-BACON ACT | SECTION O.4. - PAGE 18 |
| APPRENTICES AND TRAINEES | SECTION O.4.h. - PAGE 20 & 21 |
| NOTICES | SECTION P - PAGE 22 |
| PAYMENTS | SECTION Q - PAGE 22 |
| INTEREST | SECTION R - PAGE 22 |
| ADMINISTRATION | SECTION S - PAGE 23 |
| GRATUITIES | SECTION T - PAGE 23 |
| SUCCESSIONS AND ASSIGNMENTS | SECTION U - PAGE 23 |
| PROPERTY DESCRIPTION | EXHIBIT A - PAGE 24 |
| BOUNDARY DESCRIPTION | EXHIBIT A - PAGE 25 |
| ASSIGNMENT OF RENTS AND LEASES | EXHIBIT A - |
| LEGAL DESCRIPTION | EXHIBIT A - PAGE 1 THRU 10 |
| MAP | EXHIBIT A - PAGE 26 |

| AGREEMENT TO LEASE | EXHIBIT B TO OUTLEASE |
|---|---|
| AGREEMENT TO LEASE PREMISES | EXHIBIT B - PAGE 1 |
| CONSIDERATION FOR CONSTRUCTION OF IMPROVEMENTS | EXHIBIT B - PAGE 1 |
| DESIGN SUBMITTALS | EXHIBIT B - PAGE 2 |
| REVIEWS PRIOR TO CONSTRUCTION | EXHIBIT B - PAGE 2 |
| CONSTRUCTION SCHEDULE | EXHIBIT B - PAGE 2 |
| CONSTRUCTION DELAYS AND DEFAULT | EXHIBIT B - PAGE 3 |
| ACCESS TO PROJECT SITE | EXHIBIT B - PAGE 3 |
| DETERMINATION OF ACCEPTANCE | EXHIBIT B - PAGE 4 |
| LEASE OF IMPROVEMENTS AND PREMISES | EXHIBIT B - PAGE 4 |
| PHASED OCCUPANCY | EXHIBIT B - PAGE 4 |
| COMPLIANCE WITH RESTRICTIONS, LAWS, AND REGULATIONS | EXHIBIT B - PAGE 5 |
| NOTICES | EXHIBIT B - PAGE 5 |
| INSURANCE | EXHIBIT B - PAGE 5 |
| PERFORMANCE BOND OF SECURITY | EXHIBIT B - PAGE 6 |
| SAVE HARMLESS AND INDEMNITY | EXHIBIT B - PAGE 6 |
| ASSIGNMENTS | EXHIBIT B - PAGE 6 |
| GENERAL PROVISIONS | EXHIBIT B - PAGE 7 |
| CORPORATE CERTIFICATION | EXHIBIT B - PAGE 8 |
| NOTARY SEAL | EXHIBIT B - PAGE 9 |
| | **EXHIBIT A TO AGREEMENT TO LEASE** |
| DESCRIPTION OF PREMISES | EXHIBIT A - PAGE 10 |
| BOUNDARY DESCRIPTION | EXHIBIT A - PAGE 11 |
| MAP | EXHIBIT A - PAGE 12 |
| | **EXHIBIT B TO AGREEMENT TO LEASE** |
| DESIGN AND CONSTRUCTION CRITERIA | EXHIBIT B - PAGE 13 |
| GENERAL CRITERIA - BUILDING CODES | EXHIBIT B - PAGE II-1 |
| SITE DESIGN | EXHIBIT B - PAGE II-1 |
| SITE ENGINEERING | EXHIBIT B - PAGE II-1 |
| DWELLING UNIT DESIGN | EXHIBIT B - PAGE II-1 |
| DWELLING UNIT ENGINEERING | EXHIBIT B - PAGE II-1 |
| MAINTENANCE PROGRAM | EXHIBIT B - PAGE II-2 |
| QUALITY CONTROL PROGRAM | EXHIBIT B - PAGE II-2 |
| MAINTENANCE MANAGEMENT FACTORS | EXHIBIT B - PAGE II-2 |
| SPECIFIC CRITERIA | EXHIBIT B - PAGE II-2 |
| DENSITY | EXHIBIT B - PAGE II-2 |
| COMPOSITION | EXHIBIT B - PAGE II-2 |
| STREETS | EXHIBIT B - PAGE II-2 |
| PARKING | EXHIBIT B - PAGE II-3 |
| GRADING AND DRAINAGE | EXHIBIT B - PAGE II-3 |
| UTILITIES | EXHIBIT B - PAGE II-3 |
| WATER DISTRIBUTION SYSTEM | EXHIBIT B - PAGE II-4 |
| SANITARY SEWAGE SYSTEM | EXHIBIT B - PAGE II-4a |
| GAS DISTRIBUTION SYSTEM | EXHIBIT B - PAGE II-4a |
| ELECTRICAL DISTRIBUTION SYSTEM | EXHIBIT B - PAGE II-5 |

| | |
|---|---|
| STREET LIGHTING | EXHIBIT B - PAGE II-6 |
| FIRE ALARM | EXHIBIT B - PAGE II-6 |
| METERING | EXHIBIT B - PAGE II-6 |
| TELEPHONE SYSTEM | EXHIBIT B - PAGE II-6 |
| TELEVISION SYSTEM | EXHIBIT B - PAGE II-6 |
| RECREATION | EXHIBIT B - PAGE II-7 |
| UNIT DESIGN | EXHIBIT B - PAGE II-7 |
| APPLIANCES | EXHIBIT B- PAGE II-7 |
| BATHS | EXHIBIT B - PAGE II-8 |
| CLOSETS | EXHIBIT B - PAGE II-8 |
| BULK STORAGE | EXHIBIT B - PAGE II-8 |
| WINDOWS | EXHIBIT B - PAGE II-8 |
| MISCELLANEOUS | EXHIBIT B - PAGE II-9 |
| EXTERIORS | EXHIBIT B - PAGE II-9 |
| INTERIORS | EXHIBIT B - PAGE II-9a |
| INSULATION | EXHIBIT B - PAGE II-10 |
| HARDWARE | EXHIBIT B - PAGE II-10 |
| MECHANICAL | EXHIBIT B - PAGE II-10 |
| ENERGY | EXHIBIT B - PAGE 10 |
| HEATING AND COOLING | EXHIBIT B - PAGE II-11 |
| MANAGEMENT/MAINTENANCE SPACE | EXHIBIT B - PAGE II-11 |
| PROPOSER ORGANIZATION AND STAFFING | EXHIBIT B - PAGE II-11 |
| PROPOSER PLANS AND METHODS FOR COMPLIANCE WITH SECTION VII | EXHIBIT B - PAGE II-1 |
| DEVELOPER QUALITY CONTROL PROGRAM FOR MAINTENANCE AND SERVICES | EXHIBIT B - PAGE II-12 |
| METHODS FOR ACCOMPLISHMENT OF CHANGE OF OCCUPANCY WORK | EXHIBIT B - PAGE II-12 |
| PLANS FOR COORDINATION AND SCHEDULING OF WORK OTHER THAN CHANGE OF OCCUPANCY | EXHIBIT B - PAGE II-12 |
| PLANS FOR REPAIR OR REPLACEMENT OF MAJOR COMPONENTS | EXHIBIT B - PAGE II-12 |
| LTR FROM MARK LUNDGREN TO DICK FISCHER CONCERNING CHANGES DATED 30 MARCH 1988 | EXHIBIT B1 |
| LTR FROM CAPT. K.L. VASILIK TO DICK FISCHER DATED 11 AUGUST 1988 - 6 PAGES | EXHIBIT B2 |
| LTR FROM J.M. DOUGHERTY TO DICK FISCHER DATED 22 JULY 1988 | EXHIBIT B3 |
| LTR FROM DICK FISCHER TO MARK LUNDGREN DATED 12 JULY 1988 - 3 PAGES | |


**EXHIBIT C TO AGREEMENT TO LEASE**


COMPLETION DATE

| INLEASE | EXHIBIT D TO AGREEMENT TO LEASE |
|---|---|
| ARTICLE I - THE PREMISES | EXHIBIT D - PAGE 1 |
| ARTICLE II - THE TERM | EXHIBIT D - PAGE 1 |
| ARTICLE III - ASSIGNMENT AND SUBLETTING | EXHIBIT D - PAGE 2 |
| ARTICLE IV - RENT | EXHIBIT D - PAGE 2 |
| NAME CHANGE | EXHIBIT D - PAGE 2a |
| ARTICLE V - RIGHT OF FURST REFUSAL | EXHIBIT D - PAGE 3 |
| ARTICLE VI - UTILITIES, RATES, CHARGES | EXHIBIT D - PAGE 3 |
| ARTICLE VII - ALTERATIONS | EXHIBIT D - PAGE 4 |
| ARTICLE VIII - MAINTENANCE, REPLACEMENTS, | EXHIBIT D - PAGE 4 |
| REHABILITATION, REDECORATION AND REPAIR | EXHIBIT D - PAGE 4a |
| ARTICLE IX - LOSS, DAMAGE AND INSURANCE | EXHIBIT D - PAGE 5 |
| ARTICLE X - DAMAGE OR DESTRUCTION BY FIRE OR OTHER CAUSES | EXHIBIT D - PAGE 5 |
| ARTICLE XI - NOTICES | EXHIBIT D - PAGE 6 |
| ARTICLE XII - COVENANT OF TITLE | EXHIBIT D - PAGE 6 |
| ARTICLE XIII - OFFICIALS NOT TO BENEFIT | EXHIBIT D - PAGE 6 |
| ARTICLE XIV - MORTGAGE OF PREMISES | EXHIBIT D - PAGE 7 |
| ARTICLE XV - RIGHTS AND DUTIES OF MORTGAGES | EXHIBIT D - PAGES 8 and 9 |
| ARTICLE XVI - DISPUTES | EXHIBIT D - PAGES 10 and 11 |
| ARTICLE XVII - GRATUITIES | EXHIBIT D - PAGES 11 and 12 |
| ARTICLE XVIII - COVENANT AGAINST CONTINGENT FEES | EXHIBIT D - PAGE 12 |
| ARTICLE XIX - EXAMINATION OF RECORDS | EXHIBIT D - PAGES 12 and 13 |
| ARTICLE XX - ASSIGNMENT OF CLAIMS | EXHIBIT D - PAGES 13 and 14 |
| ARTICLE XXI - EQUAL OPPORTUNITY CLAUSE | EXHIBIT D - PAGES 14 and 15 |
| ARTICLE XXII - FACILITIES NONDISCRIMINATION | EXHIBIT D - PAGE 16 |
| ARTICLE XXIII - MISCELLANEOUS PROVISIONS | EXHIBIT D - PAGE 17 |
| SIGNATURE EXECUTION | EXHIBIT D - PAGE 18 |
| CORPORATE CERTIFICATION | EXHIBIT D - PAGE 19 |
| SIGNATURE EXECUTION | EXHIBIT D - PAGE 20 |
| | **EXHIBIT A TO INLEASE** |
| DESCRIPTION OF PREMISES | EXHIBIT A - PAGE 21 |
| BOUNDARY DESCRIPTION | EXHIBIT A - PAGE 22 |
| MAP | EXHIBIT A - PAGE 23 |
| | **EXHIBIT B TO INLEASE** |
| EXAMPLE RENTAL CALCULATION | EXHIBIT B - PAGES 24 and 25 |
| | **EXHIBIT C TO INLEASE** |
| **SECTION VII - MAINTENANCE, REPAIR AND OPERATIONAL SERVICES STANDARDS ANNEX** | EXHIBIT C - PAGE VII-1 |

| | |
|---|---|
| INDEX | EXHIBIT C - PAGE VII-1 |
| A. GENERAL | EXHIBIT C - PAGE VII-2 |
| B. DEFINITIONS | EXHIBIT C - PAGES VII-2, |
| Abandonment; Acceptance Inspection; | EXHIBIT C - PAGE VII-2 |
| Assignment | EXHIBIT C - PAGE VII-2 |
| Basic allowance for quarters, (BAQ)/ Variable Housing Allowance (VHA); | EXHIBIT C - PAGE VII-3 |
| Beneficial Occupancy Date | EXHIBIT C - PAGE VII-3 |
| Catastrophe | EXHIBIT C - PAGE VII-3 |
| Change of Occupancy | EXHIBIT C - PAGE VII-3 |
| Common Areas | EXHIBIT C - PAGE VII-3 |
| Developer/Lessee | EXHIBIT C - PAGE VII-3 |
| Downtime | EXHIBIT C - PAGE VII-3 |
| Emergency/Service Call | EXHIBIT C - PAGE VII-3 |
| Facility History File | EXHIBIT C - PAGE VII-3 |
| Field Activity | EXHIBIT C - PAGE VII-4 |
| Government | EXHIBIT C - PAGE VII-4 |
| Housing Project Manager | EXHIBIT C - PAGE VII-4 |
| Housing Site | EXHIBIT C - PAGE VII-4 |
| Maintenance | EXHIBIT C - PAGE VII-4 |
| Moveable Equipment | EXHIBIT C - PAGE VII-4 |
| Normal Wear and Tear | EXHIBIT C - PAGE VII-4 |
| Occupant | EXHIBIT C - PAGE VII-4 |
| Operational Services | EXHIBIT C - PAGE VII-4 |
| Other Real Property (OPR) | EXHIBIT C - PAGE VII-4 |
| Pest Control | EXHIBIT C - PAGE VII-5 |
| Pre-Termination Inspection | EXHIBIT C - PAGE VII-5 |
| Preventive Maintenance | EXHIBIT C - PAGE VII-5 |
| Repair | EXHIBIT C - PAGE VII-5 |
| Restoration | EXHIBIT C - PAGE VII-5 |
| Site Manager | EXHIBIT C - PAGE VII-5 |
| Structure | EXHIBIT C - PAGE VII-5 |
| Termination | EXHIBIT C - PAGE VII-5 |
| Termination Inspection | EXHIBIT C - PAGE VII-5 |
| Uninhabitable | EXHIBIT C - PAGE VII-5 |
| Working Hours | EXHIBIT C - PAGE VII-6 |
| Work Order | EXHIBIT C - PAGE VII-6 |
| Work Reception Desk | EXHIBIT C - PAGE VII-6 |
| C. RESPONSIBILITIES | EXHIBIT C - PAGE VII-6 |
| General | EXHIBIT C - PAGE VII-6 |
| Maintenance Management | EXHIBIT C - PAGE VII-6 |
| On-Site Facilities for Government Use | EXHIBIT C - PAGE VII-7 |
| Personnel Requirements | EXHIBIT C - PAGE VII-7 |
| Work Reception Desk | EXHIBIT C - PAGE VII-7 |
| Facility History Files | EXHIBIT C - PAGE VII-7 |
| Moveable Equipment Inventories | EXHIBIT C - PAGE VII-8 |
| Quality of Work | EXHIBIT C - PAGE VII-8 |
| Permits | EXHIBIT C - PAGE VII-8 |
| Safety | EXHIBIT C - PAGE VII-8 |
| Pre-Performance Conference | EXHIBIT C - PAGE VII-8 |

| | |
|---|---|
| Performance of Work | EXHIBIT C - PAGE VII-9 |
| Major Repairs | EXHIBIT C - PAGE VII-10 |
| Abandonments | EXHIBIT C - PAGE VII-10 |
| Notification of Repairs | EXHIBIT C - PAGE VII-10 |
| Damages Dur to Fire or Other Causes | EXHIBIT C - PAGE VII-10 |
| Insurances | EXHIBIT C - PAGE VII-11 |
| Inspections | EXHIBIT C - PAGES VII-11, VII-12 and VII-13 |
| Developer Quality Control | EXHIBIT C - PAGES VII-13 & VII-1 |
| Service Calls | EXHIBIT C - PAGE VII-14, VII-15 and VII-16 |
| Change of Occupancy | EXHIBIT C - PAGES VII-16, VII-17 and VII-18 |
| Damages Caused by Occupants | EXHIBIT C - PAGE VII-18 |
| D. STANDARDS FOR MAINTENANCE OF STRUCTURES | EXHIBIT C - PAGE VII-19 |
| Structural Exterior | EXHIBIT C - PAGES VII-19 & VII-2 |
| Structural Interior | EXHIBIT C - PAGES VII-20, VII-21 and VII-22 |
| Electrical | EXHIBIT C - PAGE VII-22 |
| Plumbing | EXHIBIT C - PAGE VII-23 |
| Heating, Ventilation and Air Conditioning | EXHIBIT C - PAGE VII-23 |
| Maintenance/Repair/Replacement of Appliances | EXHIBIT C - PAGE VII-23 |
| Painting | EXHIBIT C - PAGES VII-24 and VII-25 |
| E. STANDARDS FOR MAINTENANCE OF OTHER REAL PROPERTY | EXHIBIT C - PAGE VII-25 |
| Utilities | EXHIBIT C - PAGE VII-25 |
| Roads | EXHIBIT C - PAGE VII-25 |
| Grounds Maintenance | EXHIBIT C - PAGES VII-26, VII-27 and VII-28 |
| Drainage Systems | EXHIBIT C - PAGE VII-28 |
| Miscellaneous | EXHIBIT C - PAGES VII-28 & 28a |
| F. STANDARDS FOR PROVISION OF OPERATIONAL SERVICES | EXHIBIT C - PAGE VII-29 |
| Pest Control Services | EXHIBIT C - PAGE VII-29 |
| Janitorial Services | EXHIBIT C - PAGES VII-29 & 29a VII-30, VII-31, VII-32,VII-33, VII-34 VII-35,VII-36 |
| G. PAYMENTS AND DEDUCTIONS | EXHIBIT C - PAGE VII-36 |
| Consequences of Developer's Failure to Perform Required Services | EXHIBIT C - PAGE VII-36, VII-37 and VII-38 |
| Reserved | EXHIBIT C - PAGE VII-38 |
| Invoicing Instructions | EXHIBIT C - PAGE VII-38 |
| Incentive Fee Board | EXHIBIT C - PAGE VII-39 |
| AWARD FEE EVALUATION CRITERIA | EXHIBIT C - PAGE VII-40 & VII-41 |
| EXHIBIT 1 - MONTHLY BASIC ALLOWANCE FOR QUARTERS (BAQ) AND VAIRABLE | EXHIBIT C - PAGE VII-42 |

HOUSING ALLOWANCE (VHA)

EXHIBIT 2 - NOTIFICATION OF SCHEDULED CHANGE OF OCCUPANCY EXHIBIT C - PAGE VII-43

EXHIBIT 3 - NOTIFICATION OF WORK COMPLETION

EXHIBIT 4 - GOVERNMENT'S RESPONSIBILITIES WHICH WILL BE PERFORMED BY OCCUPANT EXHIBIT C - PAGE VII-45

EXHIBIT 5 - SAMPLE WORK AUTHORIZATION

**EXHIBIT E TO AGREEMENT TO LEASE**

LETTER FROM RYAN GROUP CONCERNING CHANGES

**EXHIBIT F TO AGREEMENT TO LEASE**

RECOMMENDED CHANGES

DEPARTMENT OF THE NAVY
OUTLEASE (LAND)
PART 1

This OUTLEASE is entered into under the authority of 10 U.S.C. 2828(g), and 10 U.S.C. 2667 for the terms as specified in "B" below, between Dick Fischer Development #3, Inc., Seattle, WA hereinafter called the "LESSEE" and the United States of America, acting by and through the Commanding Officer, Northern Division, Naval Facilities Engineering Command, Philadelphia, PA, hereinafter called the "GOVERNMENT".

A. Leased Property:

Under the terms and conditions of this Outlease, the GOVERNMENT hereby leases to the LESSEE that portion of the Naval Weapons Station Earle, Colts Neck, NJ (hereinafter called the "Station"), hereinafter described, which portion is hereinafter called the "Leased Property";

As described in the legal description and as delineated on a drawing, marked Exhibit "A", attached hereto and made part hereof;

Together with the right to construct, operate, maintain, replace and repair lines for electricity, gas, water, sanitary sewage, telephone, television or other utility (see Exhibit "A").

Together with rights of ingress and egress and the right, in common with others, to the use of the roadways serving the Leased Property.

B. Term:

The term of this Lease shall be for a period of 52 years. The first 22 years shall be under the authority of 10 U. S. C. 2828(g) and shall begin on September 1, 1988 and end on August 31, 2010. Upon expiration of the initial 22 years, this lease shall continue, commencing on September 1, 2010 and ending on August 31, 2040 under the authority of 10 U.S.C. 2667, unless extended in accordance with Article II of the Inlease, or sooner terminated in accordance with the provisions of Article E or F hereof.

C. Rent:

Upon continuance of this Outlease after the initial 22 years, under the authority of 10 U. S.C. 2667, LESSEE shall pay to the GOVERNMENT an annual rental of an amount equal to the appraised fair market rental value of the Leased Property as determined by the GOVERNMENT, based upon the value of the land as unimproved property (except for Government-installed improvements). Payment shall be made quarterly in advance in accordance with the provisions of Article Q of Part II hereof. However, no rental shall be charged during any period covered by the Agreement to Lease (Exhibit B to the Outlease) and the Inlease (Exhibit D to the Agreement to Lease) between LESSEE and GOVERNMENT for the construction, operation and leasing of family housing units on the Leased Property.

D. Use:

The sole purpose for which LESSEE shall use the Leased Property, in the absence of prior written approval of the GOVERNMENT for any other use, is for the construction, operation and leasing of three hundred (300) units of residential housing. No additional structures may be constructed during the term of this Outlease unless specifically approved by the Government. Upon the termination of the Inlease, the Lessee shall have the right to lease the housing constructed for the Government to members of the general public of Lessee's own choosing and to set rental rates and other terms of occupancy consistent with applicable laws and regulations. Lessor shall, during such period, grant reasonable access to the leased property.

E. National Emergency Termination By GOVERNMENT:

During any national emergency declared by the Congress or the President pursuant to Title II of the National Emergencies Act of September 14, 1976 (Public Law 94-412), 90 stat. 1255, the GOVERNMENT shall have the right to suspend or terminate this Outlease, at any time, without prior notice, and regardless of any lack of breach by LESSEE of any of the terms and conditions of this Outlease.

F. Other Termination:

1. Termination By GOVERNMENT For Breach:

a. Default By LESSEE: (Laurelwood)

In the event that the LESSEE fails to pay the GOVERNMENT any of the rentals required to be paid pursuant to Paragraph C hereof when the same shall be due and payable, or shall violate any other covenant of this Outlease, and shall fail to pay such rental or cure such violation within thirty (30) days following receipt of written notice thereof from the GOVERNMENT (or commence the curing of such violation if the same cannot be cured within thirty (30) days), then in that event the GOVERNMENT may terminate this Outlease and/or pursue such other remedies as may be provided by law; provided, however, prior to termination, that the Outlease Mortgagee is provided with a copy of any such notice of default together with the opportunity to cure same within thirty (30) days following receipt thereof (or commence the curing of such violation if the same cannot be cured within thirty (30) days. In the event of termination of this Outlease, the LESSEE shall be liable to the GOVERNMENT for all costs of the termination including but not limited to:

(1) The costs incurred in resuming possession of the Leased Property,

(2) The costs incurred in performing or securing the performance of any obligation of the LESSEE to be performed hereunder, and



4

(3) An amount equal to the aggregate of all rents and other charges assumed hereunder and not theretofore paid or satisfied, less the net rentals, if any, collected by the GOVERNMENT on the reletting of the Leased Property, which amounts shall be due and payable at the time when such rents and charges would have accrued or become due and payable under this Lease.

b. Furthermore, all or any portion of the major improvements made under Article G. of this Outlease will, at the GOVERNMENT's option:

(1) be removed by the LESSEE within 60 days of the date of termination at the LESSEE'S sole cost and expenses, or
(2) failing that, be removed by the GOVERNMENT and cost for removal be charged to the LESSEE, or
(3) become property of the GOVERNMENT.

R 2. Termination for Casualty:

LESSEE or GOVERNMENT shall have the right to terminate this Outlease upon thirty (30) days written notice to the respective designated agents of the parties hereto in the event of damage to or destruction of all of the Improvements on the Leased Property or such a substantial portion thereof as to render fifty percent (50%) or more of the Leased Property actually used by the LESSEE for its operations incapable of such use, but only if (1) the LESSEE has not within sixty (60) days of such damage or destruction either authorized or directed the repair, rebuilding, or replacement of the improvements, or made provision for payment for such repair, rebuilding, or replacement by the application of insurance proceeds or otherwise, or (2) the repairs, rebuilding or replacement cannot reasonably be expected to be
R substantially completed within sixteen (16) months of the damage or destruction, and further that (3) such damage or destruction was not
R occasioned by the fault or negligence of the party seeking termination or any of its officers, agents, servants, employees, licensees, or
R invitees, or by any failure on the part of the party seeking termination to fully perform its obligations under this Outlease.

3. Termination by Lessee:

a. LESSEE shall have the right to terminate this Outlease upon thirty (30) days written notice to the designated representative of the LESSOR in the event the Inlease is terminated by Lessor prior to the expiration of its full term due to the failure or refusal for any reason on the part of the Congress and/or the President to enact legislation appropriating funds necessary for payment of the rents due under the Inlease.

b. LESSEE shall have the first right to buy the Leased Property if the GOVERNMENT decides to sell. The purchase price shall be the fair market value at the time of sale.



INITIALS: GOVERNMENT ________ LESSEE ________

G. Construction of Improvements, Installations, Alterations and Removals:

1. During the term of this Outlease, LESSEE shall, at its own expense, construct, erect, place, install and maintain a building or buildings and other structures and improvements on the Leased Property as described in Exhibit "B" attached hereto and by this reference made a part hereof. Said improvements shall be constructed pursuant to and in accordance with Exhibit "B". Any determination of default made by the GOVERNMENT under Exhibit "B" shall constitute a breach of this Outlease. In such instance, the GOVERNMENT, in addition to any other rights or remedies available to it by law or otherwise, at its option, may terminate this Outlease at no liability or cost to the GOVERNMENT.

2. LESSEE shall within sixty (60) days after expiration or prior termination of this Lease pursuant to Articles E or F.2. remove all buildings, structures, fixtures and other improvements constructed or placed on the Leased Property unless the Government elects to acquire said improvements pursuant to Article H. All property not so removed shall be deemed abandoned by LESSEE and become the property of the GOVERNMENT to be used or disposed of by the GOVERNMENT in any manner whatsoever without any liability or account to LESSEE therefore. Any disposal by the GOVERNMENT shall be at LESSEE's sole cost and expense.

3. After LESSEE removes all buildings, structures, fixtures and other improvements, LESSEE shall restore the property at the expiration of this Lease. LESSEE shall remove all structures, foundations, and fencing. LESSEE shall clear all debris and spread top soil and seed the area. Pavements shall be left in place with associated drainage structure. All utility lines shall be left in place, secured and marked.

H. Title To Improvements:

Notwithstanding any other provisions of this Outlease, or otherwise, title to all major improvements made under Article G. shall during the term of the Outlease remain in the LESSEE. Said title shall remain in the LESSEE in the event the Outlease is terminated pursuant to Articles E. (National Emergency), F.2. (Casualty), and F.3. (Failure of Appropriations). In such instances, should the GOVERNMENT elect to acquire all or a part of the LESSEE's interest in such improvements after termination pursuant to Articles E., F.2. or F 3., the valuation thereof shall assume the LESSEE's right to use or occupy the Leased Property for the remaining useful life of LESSEE's improvements. Title to any property for which the LESSEE is compensated by the GOVERNMENT, without regard to its nature, shall vest in the GOVERNMENT and the LESSEE shall convey or assign to the GOVERNMENT, promptly at the GOVERNMENT's request, all right, title, and interest in and to any underlying leases or other real property necessary for the use and enjoyment of the property for which the LESSEE is compensated.

I. Insurance:

The initial minimum amounts and types of insurance which LESSEE shall procure and maintain on the Leased Property together with the Improvements thereon in accordance with the provisions of Article A of Part II hereof are the following:

WORKMEN'S COMPENSATION INSURANCE: As required by law.
LIABILITY: $1,000,000 bodily injury per person and $5,000,000 per accident.
PROPERTY DAMAGE: In an amount not less than $500,000 per ocurrence.
FIRE AND EXTENDED COVERAGE: In an amount not less than the full replacement value of the project or the aggregate amount of indebtedness whichever is greater.

J. General Maintenance Obligation:

Unless otherwise provided for in the Inlease (Exhibit D to the Agreement to Lease), LESSEE, at its own expense, shall protect, preserve, maintain and repair the Leased Property together with any and all improvements located thereon and shall keep the same in good order and repair. LESSEE shall keep the streets, sidewalks free from obstructions, shall perform grounds maintenance (including, but not limited to, mowing, trimming, weed and brush control and general policing), and shall promptly remove all ashes and refuse of any kind from the Leased Property during this term. Further, LESSEE shall maintain the premises and buildings and other improvements located thereon in accordance with applicable local building, zoning, fire, health and other laws, ordinances and regulations.

K. General Provisions:

There are hereby incorporated into this Outlease, by attachment hereto, the following general provisions as set forth in Part II of this Outlease.

L. EXECUTION BY LESSEE

NAME OF LESSEE Dick Fischer Development #3, Inc.

BY [signature] (Signature) [signature] (Witness)

President (Title) 10-7-88 (Date)

M. FOR CORPORATE LESSEE, CERTIFICATION BY SECRETARY OR ASSISTANT SECRETARY OF THE CORPORATION

I certify that the person who signed this Outlease on behalf of LESSEE was then the officer indicated and this Outlease was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

Jeri Q. Fischer (Signature)

(CORPORATE SEAL)

Corporate Secretary (Title)

N. EXECUTION FOR AND ON BEHALF OF THE GOVERNMENT

THE UNITED STATES OF AMERICA

BY [signature] (Contracting Officer) October 24, 1988 (Date) [signature] (Witness)

O. SERVICE IDENTIFICATION DATA

| NAME AND ADDRESS OF ACTIVITY | DESIGNATED GOVERNMENT REPRESENTATIVE/ TITLE AND ADDRESS |
|---|---|
| Naval Weapons Station, Earle<br>Colts Neck, NJ 07722-5000 | Commanding Officer, Northern Division<br>Naval Facilities Engineering Command<br>Philadelphia, PA 19112-5094 |
| ADDRESS OF LESSEE<br>937 Harvard Avenue East<br>Seattle, WA 98102 | |





REPRODUCED AT GOVERNMENT EXPENSE DEPARTMENT OF THE NAVY 5854 COPIER

K. General Provisions:

There are hereby incorporated into this Outlease, by attachment hereto, the following general provisions as set forth in Part II of this Outlease.

L. EXECUTION BY LESSEE

NAME OF LESSEE Dick Fischer Development #3, Inc.

BY [signature] (Signature) , [signature] (Witness)

President (Title) 10-7-88 (Date)

M. FOR CORPORATE LESSEE, CERTIFICATION BY SECRETARY OR ASSISTANT SECRETARY OF THE CORPORATION

I certify that the person who signed this Outlease on behalf of LESSEE was then the officer indicated and this Outlease was duly signed for and on behalf of said corporation by authority of its governing body and is within the scope of its corporate powers.

(CORPORATE SEAL)

Jeri Q. Fischer (Signature)

Corporate Secretary (Title)

N. EXECUTION FOR AND ON BEHALF OF THE GOVERNMENT

THE UNITED STATES OF AMERICA

BY [signature] (Contracting Officer) October 24, 1988 (Date) [signature] (Witness)

O. SERVICE IDENTIFICATION DATA

| NAME AND ADDRESS OF ACTIVITY | DESIGNATED GOVERNMENT REPRESENTATIVE/ TITLE AND ADDRESS |
|---|---|
| Naval Weapons Station, Earle<br>Colts Neck, NJ 07722-5000 | Commanding Officer, Northern Division<br>Naval Facilities Engineering Command<br>Philadelphia, PA 19112-5094 |
| ADDRESS OF LESSEE<br>937 Harvard Avenue East<br>Seattle, WA 98102 | |

OUTLEASE
PART II
DEPARTMENT OF THE NAVY
GENERAL PROVISIONS

A. Risk of Loss-Insurance:

1. LESSEE shall bear all risk of loss of or damage to the Leased Property together with the Improvements thereon arising from any cause whatsoever, with or without fault by LESSEE; Provided, however, that LESSEE's liability for any loss or damage resulting from risks expressly required to be insured against under the Outlease shall not exceed the amount of insurance so required or the amount actually procured and maintained, whichever shall be the greater; Provided, further, that maintenance of the required insurance shall effect no limitation on LESSEE's liability with respect to any loss or damage resulting from the willful misconduct, lack of good faith, or negligence of LESSEE or any of its officers, agents, servants, employees, subtenants, licensees or invitees.

2. LESSEE shall procure and maintain, at its own expense, insurance on the Leased Property together with Improvements thereon in such initial amounts and types as may exceed, but shall not be less than, the minimum amounts and types specified in Article I of Part I hereof. However, LESSEE shall provide, maintain, change or discontinue such insurance as the Designated GOVERNMENT Representative may from time to time require and direct; Provided, LESSEE's liability for loss of or damage to the Leased Property together with Improvements thereon is modified accordingly; Provided, further, that if any insurance requirement is so changed an equitable adjustment shall be made in the amount of the Rent specified in Article C of Part I hereof so as to reflect any resultant savings or increased cost to LESSEE.

3. All insurance which this Outlease requires LESSEE to carry on the Leased Property together with Improvements thereon shall be in such form, for such amounts, for such periods of time and with such insurers as the GOVERNMENT may from time to time require or approve. Each policy of insurance shall contain a provision for thirty (30) days written notice to the Designated Government Representative prior to the making of any material change in or the cancellation of the policy. LESSEE shall deliver promptly to the Designated GOVERNMENT Representative a certificate of insurance or a certified copy of each policy of insurance required by this Outlease and shall also deliver to him, no later than thirty (30) days prior to the expiration of any such policy, a certificate of insurance or a certified copy of each renewal policy covering the same risks. All insurance required or carried by LESSEE on any of the Leased Property together with Improvements thereon shall be for the protection of the GOVERNMENT and LESSEE against their respective risks and liabilities in connection with the Leased Property together with Improvements thereon. Each policy of insurance shall name both LESSEE and the United States of America (Department of the Navy) as the insured, and each policy of

insurance against loss of or damage to the Leased Property together with Improvements thereon shall contain a loss payable clause reading as follows:

"Loss, if any, under this policy shall be adjusted with Dick Fischer Development #3, Inc. and the proceeds, at the election of the GOVERNMENT, shall be payable to Dick Fischer Development #3, Inc.; any proceeds, not paid to Dick Fischer Development #3, Inc.; shall be payable to the Treasurer of the United States."

4. In the event that any item or part of the Improvements to the Leased Property shall require repair, rebuilding or replacement resulting from loss or damage, the risk of which is assumed by LESSEE under paragraph 1 of this Article, LESSEE shall promptly give notice thereof to the Local GOVERNMENT Representative and, to the extent of its liability as provided in paragraph 1 thereof, shall, upon demand, either rebuild, replace or repair the item or items of the Leased Property together with Improvements thereon so lost or damaged, as the GOVERNMENT may elect. In the event that the GOVERNMENT shall direct LESSEE to effect any repair, rebuilding or replacement which it is required to effect pursuant to this paragraph the GOVERNMENT shall direct the payment to LESSEE of so much of the proceeds of any insurance carried by LESSEE and made available to the GOVERNMENT on account of loss of or damage to any item or part of the Leased Property together with Improvements thereon as may be necessary to enable LESSEE to effect such repair, rebuilding or replacement. In the event the GOVERNMENT shall elect not to require LESSEE to repair, rebuild, or replace any item or part of the Leased Property together with Improvements thereon lost or damaged, LESSEE shall promptly pay to the GOVERNMENT out of any insurance proceeds collected by LESSEE such portion thereof as maybe allocable to loss of or damage to Leased
R Property together with Government-owned Improvements. When compliance with a GOVERNMENT request to effect any repair, rebuilding or replacement of any lost or damaged item or part of the Leased Property together with Improvements thereon would involve the incurring of costs in excess of LESSEE's liability for such lost or damage under this Article, LESSEE shall be under no obligation to effect same until after satisfactory agreement has been reached between the LESSEE and GOVERNMENT with regard to GOVERNMENT's reimbursement of such excess costs to LESSEE.

B. Representations:

LESSEE has examined, knows and accepts the condition and state of repair of the Leased Property and the Station of which it forms a part, and acknowledges that the GOVERNMENT has made no representation concerning such condition and state of repair, nor any agreement or promise to alter, improve, adapt, repair or keep in repair the same, or any item thereof, which has not been fully set forth in this Outlease which contains all the agreements made and entered into between the LESSEE and the GOVERNMENT.



INITIALS: GOVERNMENT ________ LESSEE ________

C. Subjection to Existing and Future Easements and Rights of Way:

This outlease is subject to all outstanding easements and rights of way for location of any type of facility over, across, in and upon the Leased Property, or any portion thereof, and to the right of the GOVERNMENT to grant such additional easements and rights of way over, across, in and upon the Leased Property as it shall determine to be in the public interest; Provided, that any such additional easement or right of way shall be conditioned on the assumption by the Grantee thereof of liability to LESSEE for such damages as LESSEE shall suffer for property destroyed or property rendered unusable on account of Grantee's exercise of its rights thereunder. There is hereby reserved to the holders of such easements and rights of way as are presently outstanding or which may hereafter be granted, to any workers officially engaged in the construction, installation, maintenance, operation, repair, or replacement of facilities located thereon, and to any Federal, State or local official engaged in the official inspection thereof, such reasonable rights of ingress and egress over the Leased Property as shall be necessary for the performance of their duties with regard to such facilities.

D. Indemnification by LESSEE, GOVERNMENT Non-Liability:

LESSEE covenants that it will indemnify and save and hold harmless the GOVERNMENT, its officers, agents and employees for and from any and all liability or claims for loss of or damage to any property owned by or in the custody of LESSEE, its officers, agents, servants, employees, subtenants, licensees, or invitees, or for the death of or injury to any of the same which may arise out of or be attributable to the condition, state of repair or LESSEE's use and occupancy of the Leased Property together with improvements thereon, or the furnishing of any utilities or services, or any interruption therein or failure thereof, whether or not the same shall be occasioned by the negligence or lack of diligence of LESSEE, its officers, agents, servants or employees.

E. Utilities and Services:

1. During any period covered by the Inlease between the LESSEE and the GOVERNMENT, the GOVERNMENT shall furnish, at no cost to LESSEE, potable water and sewerage to be maintained for residential purposes. GOVERNMENT shall also furnish points of connection. However, LESSEE shall be responsible for connection to such points and maintenance and operation of such water and sewerage systems for LESSEE's benefit.

2. During any period covered by the Inlease, the Government shall also furnish, at no cost to the LESSEE, fire protection, police protection, snow removal on the roads, and refuse collection.

3. During such period not covered by the inlease between the LESSEE and the GOVERNMENT, in the event that the GOVERNMENT, at its option, chooses to furnish LESSEE with any utilities and services maintained

by the GOVERNMENT which LESSEE may require in connection with its use of the Leased Property, LESSEE shall pay the GOVERNMENT the charges therefor in addition to cash rent which may be required under this Outlease. Such charges and the method of payment thereof shall be determined by the appropriate supplier of such service, in accordance with applicable laws and regulations, on such basis as the appropriate supplier of such service may establish, which may include a requirement for the installation of adequate connecting and metering equipment at the sole cost and expense of LESSEE. It is expressly agreed and understood that the GOVERNMENT during any period not covered by the Inlease in no way warrants the continued availability, maintenance or adequacy of any utilities or services furnished by it to LESSEE.

F. Mortgage of Premises:

1. Except as provided herein, the LESSEE shall not: (i) engage in any financing or other transaction creating any mortgage upon the Premises, (ii) place or suffer to be placed upon the Premises any lien or other encumbrance; or (iii) suffer any levy or attachment to be made on the LESSEE's interest in the Premises, other than such levy or attachment as may result from a foreclosure of a mortgage. Any such mortgage, encumbrance or lien shall be deemed to be a violation of this convenant on the date of its execution or filing of record regardless of whether or when it is foreclosed or otherwise enforced.

2. During the term of this Outlease, the LESSEE may encumber its interest in the Premises by way of one or more loans, secured by a mortgage. The proposed holder of any such mortgage must be approved by the GOVERNMENT prior to the execution of such loan, which shall not be unreasonably withheld. Any loan may be further secured by a conditional assignment of this Outlease by the LESSEE to the mortgagee. The GOVERNMENT agrees to execute an Estoppel Certificate and any other similar documentation as may reasonably be required by the mortgagee so as to give its consent to the said conditional assignment of this Outlease and to certify as to the status of this Outlease and to the performance of the LESSEE hereunder as of the date of such certification. Notwithstanding any foreclosure, the LESSEE shall remain liable for the performance of all the terms, covenants and conditions of this Outlease which by the terms hereof are to be carried out and performed by the LESSEE.

3. Promptly after assigning or encumbering the Premises, the LESSEE shall furnish the GOVERNMENT a written notice setting forth the name and address of such mortgagee. Further, the LESSEE shall notify the GOVERNMENT promptly of any lien or encumbrance which has been created or attached to the Premises or to the LESSEE's interest in the Premises whether by act of the LESSEE or otherwise of which the LESSEE itself has notice.

4. If a mortgagee or purchaser at foreclosure of the mortgage shall acquire the LESSEE's interest in the Premises by virtue of the default by the LESSEE under the mortgage or otherwise, this Outlease shall continue in full force and effect so long as the mortgagee or purchaser at foreclosure is not in default hereunder. The mortgagee or purchaser at foreclosure may not appoint an agent or nominee to operate the Premises on its behalf without obtaining the prior written approval of the GOVERNMENT's designated representative; such approval shall not be withheld so long as such proposed agent/nominee has experience/expertise in the development, management and operation of residential housing as determined acceptable by the GOVERNMENT. For the period of time during which the mortgagee or any purchaser at foreclosure of a mortgage holds the LESSEE's interest in the Premises, the mortgagee or such purchaser shall become liable and fully bound by the provisions of this Outlease.

G. Rights and Duties of Mortgagees:

1. With respect to the mortgagees, the GOVERNMENT agrees that the following shall apply:

   a. If requested by a mortgagee which shall have duly registered in writing with the GOVERNMENT its name and address, any notice with respect to a default or a termination of this Outlease from the GOVERNMENT to the LESSEE shall be simultaneously delivered to such mortgagee at its registered address, and in the event of any such registration no notice of default or termination of this Outlease given by the GOVERNMENT to the LESSEE shall be deemed legally effective until and unless like notice shall have been given by the GOVERNMENT to such mortgagee.

   b. Such mortgagee entitled to such notice shall have any and all rights of the LESSEE with respect to the curing of any default hereunder by the LESSEE.

   c. The GOVERNMENT will not accept any cancellation by LESSEE or enter into any material modification of this Outlease without the prior written consent thereto of each mortgagee who shall become entitled to notice as provided in Article XIV of the Inlease; provided, however that the foregoing shall not apply to any right the GOVERNMENT may have to terminate this Outlease pursuant to the terms hereof. It is also agreed that the LESSEE shall provide any such mortgagee with notice of any proposed modification.

2. If the GOVERNMENT shall elect to terminate this Outlease by reason of any default described herein, each mortgagee shall have become entitled to notice as provided in this paragraph shall not only have any and all rights of the LESSEE with respect to curing of any

default, but shall also have the right to postpone and extend the specified date for the termination of this Outlease (hereinafter called the "Mortgagee's Right to Postpone") in any notice of termination by the GOVERNMENT to the LESSEE (hereinafter called "Termination Notice") subject to the following conditions:

a. Such mortgagee shall (i) give the GOVERNMENT written notice of the exercise of the Mortgagee's Right to Postpone prior to the date of termination specified by the GOVERNMENT in the Termination Notice; and (ii) simultaneously pay to the GOVERNMENT all amounts required to cure all defaults then existing (as of date of the exercise of Mortgagee's Right to Postpone) which may be cured by the payment of a sum of money.

b. Such Mortgagee shall (i) pay all sums for rent and other sums and charges due hereunder during the period from the date of the exercise of Mortgagee's Right to Postpone and thereafter during the period of postponement; (ii) promptly initiate and diligently pursue all reasonable and necessary steps to acquire the LESSEE's interest in this Outlease and the Improvements; and (iii) promptly undertake to cure, diligently prosecute and, as soon as reasonably possible, complete the curing of any other default of the LESSEE which is susceptible of being cured by such Mortgagee.

c. The Mortgagee's Right to Postpone shall extend the date for the termination of this Outlease specified in the Termination Notice for a period of not more than six (6) months. If at the end of said six (6) months' period such Mortgagee shall be actively and in good faith engaged in steps to acquire the LESSEE's interest in this Lease and the Improvements, the time for such Mortgagee to comply with the provisions of this Article shall be extended, for such reasonable period as may be necessary under the circumstances provided that such Mortgagee uses its best efforts and continues to diligently pursue all reasonable and necessary steps to acquire the LESSEE's interest in the premises.

d. If, before the date specified for the termination of this Outlease as extended by such Mortgagee's exercise of Mortgagee's Right to Postpone, (i) the LESSEE shall be duly removed from possession; (ii) the assumption required by Article III (Inlease) of performance and observance of the covenants and conditions herein contained on the LESSEE's part to be performed shall be delivered to the GOVERNMENT by the Mortgagee, or its nominee; and (iii) the Mortgagee shall have complied with all obligations on GOVERNMENT's part to be performed hereunder and no further default shall have occurred hereunder which shall not have been cured within the periods of time after notice above provided for, then and in such event, all defaults under this Outlease shall be deemed to have been cured, and the GOVERNMENT's Termination Notice shall be deemed to have been withdrawn.

3. Nothing herein contained shall be deemed to impose any obligation on the part of the GOVERNMENT to deliver physical possession of the Demised Premises to such holder of a Mortgagee.

4. If more than one Mortgagee shall seek to exercise any of the rights provided for in this Article, the holder of the Mortgage having priority of lien over the other Mortgagees shall be entitled, as against the others, to exercise such rights. Should a dispute arise among Mortgagees regarding the priority of lien the Mortgagees must prove to the satisfaction of the GOVERNMENT that they have settled this dispute.

5. The Mortgagee may not appoint an agent or nominee to manage the premises on its behalf without first obtaining the written approval of the GOVERNMENT. Such approval shall not be withheld so long as such agent/nominee has experience/expertise in the management and operation of residential developments similar to the Premises, as determined by the GOVERNMENT.

H. Access:

The GOVERNMENT shall have access to the Leased Property at all reasonable times for any purposes not inconsistent with the quiet use, the enjoyment thereof by LESSEE, including, but not limited to, the purpose of inspection.

I. State and Local Taxes:

In the event that as a result of any future Act of Congress and/or the State of New Jersey, subjecting GOVERNMENT-owned property to taxation, any taxes, assessments or similar charges are imposed by State or local authorities upon the Leased Property (other than upon LESSEE's possessory interest therein) after the expiration of the GOVERNMENT's Inlease thereof, LESSEE shall pay the same when due and payable and this outlease shall be renegotiated so as to accomplish an equitable reduction in the amount of the Rent specified in Article C of Part I hereof, which reduction shall in no event exceed the amount of such taxes, assessments, or similar charges; Provided, in event the parties hereto are unable to agree within ninety (90) days from the date of the imposition of such taxes, assessments, or similar charges, upon a rental which in the opinion of the Designated GOVERNMENT Representative constitutes a reasonable return to the GOVERNMENT on the Leased Property, the Designated GOVERNMENT Representative shall have the right to determine the amount of the rental, which determination shall be binding on LESSEE, subject to appeal as a dispute in accordance with the provisions of Article J of this Part II.

J. Disputes:

1. This Agreement is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613) (the Act).

2. Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

3. "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the LESSEE seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph (4)(b) below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

4. a. A claim by the LESSEE shall be made in writing and submitted to the Contracting Officer for a written decision. A claim by the GOVERNMENT against the LESSEE shall be subject to a written decision by the Contracting Office.

b. For LESSEE claims exceeding $50,000, the LESSEE shall submit with the claim a certification that-

(1) The claim is made in good faith;

(2) Supporting data are accurate and complete to the best of the LESSEE's knowledge and belief; and

(3) The amount requested accurately reflects the contract adjustment for which the LESSEE believes the GOVERNMENT is liable.

c. (1) If the LESSEE is an individual, the certification shall be executed by that individual.

(2) If the LESSEE is not an individual, the certification shall be executed by-

(a) A senior company official in charge at the LESSEE's plant or location involved; or

(b) An officer or general partner of the LESSEE having overall responsibility for the conduct of the LESSEE's affairs.

5. For LESSEE claims of $50,000 or less, the Contracting Officer must, if requested in writing by the LESSEE, render a decision within 60 days of the request. For LESSEE-certified claims over $50,000, the Contracting Officer must, within 60 days, decide the claim or notify the LESSEE of the date by which the decision will be made.

6. The Contracting Officer's decision shall be final unless the LESSEE appeals or files a suit as provided in the Act.

7. The GOVERNMENT shall pay interest on the amount found due and unpaid from (1) the date the Contracting Officer receives the claim (properly certified if required), or (2) the date payment otherwise would be due, if that date is later, until the date of payment. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6-month period is fixed by the Treasury Secretary during the pendency of the claim.

8. The LESSEE shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the Contracting Officer.

K. Covenant Against Contingent Fees:

The LESSEE warrants that no person or agency has been employed or retained to solicit or secure this outlease upon an agreement or understanding, for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial agencies maintained by the LESSEE for the purpose of securing business. For breach or violation of this warranty, the GOVERNMENT shall have the right to cancel this Outlease without liability or in its discretion to require LESSEE to pay in addition to the rental or consideration , the full amount of such commission, percentage, brokerage or contingent fee.

L. Officials Not To Benefit:

No member of or Delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of this Outlease, or to any benefit to arise therefrom, but this provision shall not be construed to extend to this outlease if made with a corporation for its general benefit.

M. Failure of GOVERNMENT to Insist on Compliance:

The failure of the GOVERNMENT to insist, in any one or more instances, upon performance of any of the terms, convenants or conditions of this outlease shall not be construed as a waiver or relinquishment of the GOVERNMENT's right to the future performance of any such terms, convenants or conditions and LESSEE's obligations in respect to such future performance shall continue in full force and effect.

N. Assignment or Subletting:

LESSEE shall not transfer or assign this Outlease or any interest therein nor sublet or otherwise make available to any third party or parties any portion of the Leased Property or rights therein without the prior written consent of the GOVERNMENT which consent shall not be unreasonably withheld. Under any assignment made, with or without consent, the assignee shall be deemed to have assumed all of the obligations of LESSEE hereunder, but no assignment shall relieve the assignor of any of LESSEE's obligations hereunder except for an extension of the Outlease term beginning after such assignment, and then only if the GOVERNMENT shall have consented thereto. The assumption of the LESSEE's rights and obligations by a mortgagee as described in Article "F", shall not be considered as an assignment of this Outlease.

O. Labor Provision:

(The following clause is applicable unless this lease is exempt under the rules, regulations, and relevant orders of the Secretary of Labor (41 CFR, ch. 60).

1. During the performance of this Outlease, the LESSEE agrees as follows:

   a. The LESSEE will not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin. The LESSEE will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. Such action shall include, but not be limited to, the following: Employment, upgrading, demotion, or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The LESSEE agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the Contracting Officer setting forth the provisions of this Equal Opportunity clause.

   b. The LESSEE will, in all solicitations or advertisements for employees placed by or on behalf of the LESSEE, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

   c. The LESSEE will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the Contracting Officer advising the labor union or workers' representative of the LESSEE's commitments under this Equal Opportunity clause, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

d. The LESSEE will comply with all provisions of Executive Order No. 11246 of September 24, 1965, as amended, and of the rules, regulations, and relevant orders of the Secretary of Labor.

e. The LESSEE will furnish all information and reports required by Executive Order No. 11246 of September 24, 1965, as amended, and by the rules, regulations, and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

f. In the event of the LESSEE's noncompliance with the Equal Opportunity clause of this Outlease or with any of the said rules, regulations, or orders, this Outlease may be canceled, terminated, or suspended, in whole or in part, and the LESSEE may be declared ineligible for further GOVERNMENT leases in accordance with procedures authorized in Executive Order No. 11246 of September 24, 1965, as amended, and such other sanctions may be imposed and remedies invoked as provided in Executive Order No. 11246 of September 24, 1965, as amended, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by law.

2. Convict Labor

In accordance with the performance of work required by this Outlease, LESSEE agrees not to employ any person undergoing a sentence of imprisonment at hard labor.

3. Contract Work Hours Standards Act (40 U.S. Code Sections 327-330)

a. This Outlease, to the extent that it is a contract of a character specified in the Contract Work Hours Standards Act (40 U.S.C. 327-330) and is not covered by the Walsh-Healy Public Contracts Act (41 U.S.C. 35-45), is subject to the following provisions and exceptions of said Contract Work Hours Standards Act and to all other provisions and exceptions of said law:

(1) The LESSEE shall not require or permit any laborer or mechanic in any workweek in which he is employed on any work under this contract to work in excess of 8 hours in any calendar day or in excess of 40 hours in such workweek on work subject to the provisions of the Contract Work Hours Standards Act unless such laborer or mechanic receives compensation at a rate not less than one and one half times his basic rate of pay for all such hours worked in excess of 8 hours in any calendar day or in excess of 40 hours in such workweek, whichever is the greater number of overtime hours.

The "basic rate of pay," as used in this clause, shall be the amount paid per hour, exclusive of the LESSEE's contribution or cost for fringe benefits and any cash payment made in lieu of providing fringe benefits, or the basic hourly rate contained in the wage determination, whichever is greater.

(2) In the event of any violation of the provisions of paragraph (a), the LESSEE shall be liable to any affected employee for any amounts due, and to the United States for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic employed in violation of the provisions of paragraph (a) in the sum of $10 for each calendar day on which such employee was required or permitted to be employed on such work in excess of 8 hours or in excess of the standard workweek of 40 hours without payment of the overtime wages required by paragraph (a).

4. DAVIS-BACON ACT (40 U.S.C. 276a to a-7) (1977 DEC)

a. All mechanics and laborers employed or working directly upon the site of the work shall be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by the Copeland Regulations (29 CFR, Part 3)), the full amounts due at time of payment computed at wage rates not less than the aggregate of the basic hourly rates and the rates of payments, contributions, or costs for any fringe benefits contained in the wage determination decision of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the LESSEE/Contractor or subcontractor and such laborers and mechanics. A copy of such wage determination decision shall be kept posted by the LESSEE/Contractor at the site of the work in a prominent place where it can be easily seen by the workers. The term mechanics and laborers shall be deemed to include apprentices and trainees not covered by an approved program as provided by the apprentice and trainee clause of the contract.

b. The LESSEE/Contractor may discharge his obligation under this clause to workers in any classification for which the wage determination decision contains:

(1) Only a basic hourly rate of pay, by making payment at not less than such basic hourly rate, except as otherwise provided in the Copeland Regulations (29 CFR, part 3); or

(2) Both a basic hourly rate of pay and fringe benefit payments, by making payment in cash, by irrevocably making contributions pursuant to a fund, plan, or program for, and/or assuming an enforceable commitment to bear the cost

of, bona fide fringe benefits contemplated by the Davis-Bacon Act, or by any combination thereof. Contributions made, or costs assumed, on other than a weekly basis shall be considered as having been constructively made or assumed, during a weekly period to the extent that they apply to such period. Where a fringe benefit is expressed in a wage determination in any manner other than as an hourly rate and the LESSEE/Contractor pays a cash equivalent or provides an alternative fringe benefit, he shall furnish information with his payrolls showing how he determined that the cost incurred to make the cash payment or to provide the alternative fringe benefit is equal to the cost of the wage determination fringe benefit. In any case where the LESSEE/Contractor provides a fringe benefit different from any contained in the wage determination, he shall similarly show how he arrived at the hourly rate shown therefor. In the event of a disagreement between or among the interested parties as to an equivalent of any fringe benefit, the Contracting Officer shall submit the question, together with his recommendation, to the Secretary of Labor for final determination.

c. The assumption of an enforceable commitment to bear the cost of fringe benefits, or the provision of any fringe benefits not expressly listed in section 1(b)(2) of the Davis-Bacon Act or in the wage determination decision forming a part of the contract, may be considered as payment of wages only with the approval of the Secretary of Labor pursuant to a written request by the LESSEE/Contractor. The Secretary of Labor may require the LESSEE/Contractor to set aside assets, in a separate account, to meet his obligations under any unfunded plan or program.

d. The Contracting Officer shall require that any class of laborers or mechanics, including apprentices and trainees, which is not listed in the wage determination decision and which is to be employed under the contract shall be classified or reclassified conformably to the wage determination decision and shall report the action to the Secretary of Labor. If the interested parties cannot agree on the proper classification or reclassification of a particular class of laborers or mechanics, including apprentices and trainees, to be used, the Contracting Officer shall submit the question, together with his recommendation, to the Secretary of Labor for final determination.

e. In the event it is found by the Contracting Officer that any laborer or mechanic, including all apprentices and trainees, employed by the LESSEE/Contractor or any subcontractor directly on the site of the work covered by this contract has been or is being paid at a rate of wages less than the rate of wages required by paragraph a. of this clause, or by the "Apprentices and Trainees" clause of this contract paragraph h. below, the Contracting

Officer may (i) by written notice to the Government prime LESSEE/Contractor terminate his right to proceed with the work, or such part of the work as to which there has been a failure to pay said required wages, and (ii) prosecute the work to completion by contract or otherwise, whereupon such LESSEE/Contractor and his sureties shall be liable to the Government for any excess costs occasioned the Government thereby.

f. Paragraphs a. through e. of the clause shall apply to this contract to the extent that it is (i) a prime contract with the Government subject to the Davis-Bacon Act or (ii) a subcontract also subject to the Davis-Bacon Act under such prime contract.

g. MINIMUM WAGE RATES AND OTHER LABOR STANDARDS (6-72)

(1) The LESSEE/Contractor shall pay mechanics and laborers employed or working directly upon the site of the work wage rates not less than those determined as prevailing by the Secretary of Labor and contained in the wage determination decision that is attached as Exhibit C to this Outlease or addendum thereto. In the event of any difference between the LESSEE/Contractor and the Government concerning the proper wage rates to be paid, the classification of employees to conform to prevailing practice, the amount of wages due employees, or any other application or interpretation of the labor standards provisions in this contract, the differences shall be referred to the Contracting Officer who shall determine the matter with advice from the Secretary of Labor as required by Department of Labor regulations.

(2) Investigation of Labor Conditions. The wage determination decision of the Secretary of Labor attached hereto or included by amendment is made a part of this contract for the purpose of setting forth the minimum hourly wage rates required to be paid by the Davis-Bacon Act. The rates set forth in the wage determination are no warranty that labor will be available at these rates. Bidders are advised to make their own investigation to determine local labor conditions.

h. APPRENTICES AND TRAINEES (1977 DEC)

(1) Apprentices will be permitted to work at less than the predeterminated rate for the work they performed when they are employed and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Bureau of Apprenticeship and Training, or with a state apprenticeship agency recognized by the Bureau, or if a person is employed in his first ninety (90) days of probationary employment as an apprentice in such an apprenticeship program, who is not

individually registered in the program, but who has been certified by the Bureau of Apprenticeship and Training or a state apprenticeship agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen in any craft classification employed on this contract shall not be greater than the ratio permitted to the LESSEE/Contractor as to his entire work force under the registered program. Any employee listed on a payroll at an apprentice wage rate, who is not a trainee as defined in paragraph (2) of this clause or is not registered or otherwise employed as stated above, shall be paid the wage rate determined by the Secretary of Labor for the classification of work he actually performed. The LESSEE/Contractor or subcontractor shall furnish to the Contracting Officer written evidence of the registration of his program and apprentices as well as the appropriate ratio and wage rates (expressed in percentages of the journeyman hourly rates), for the area of construction prior to using apprentices on the contract work. The wage rate paid apprentices shall be not less than the appropriate percentage of the journeyman's rate contained in the applicable wage determination.

(2) Trainees will be permitted to work at less than the predetermined rate for the work performed when they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification, by the U.S. Department of Labor, Employment and Training Administration, Bureau of Apprenticeship and Training. The ratio of trainees to journeymen on this contract shall not be greater than permitted under the plan approved by the Bureau of Apprenticeship and Training. Every trainee must be paid at not less than the rate specified in the approved program for his level of progress. Any employee listed on the payroll at a trainee rate who is not registered and not participating in a training plan approved by the Bureau of Apprenticeship and Training shall be paid not less than the wage rate determinated by the Secretary of Labor for the classification of work he actually performed. The LESSEE/Contractor or subcontractor shall furnish the Contracting Officer written evidence of the certification of his program, the registration of the trainee, and the ratios and wage rates prescribed in that program. In the event the Bureau of Apprenticeship and Training withdraws the approval of a training program, the LESSEE/Contractor shall no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

(3) The utilization of apprentices, trainees, and journeymen under this clause shall be in conformity with the equal opportunity requirements of this contract.

P. Notices:

All notices, payments, other correspondence required under or arising from the terms of this Outlease, from the GOVERNMENT to the LESSEE shall be served on or mailed to the LESSEE at an address specified by the LESSEE. All notices, payment, or other correspondence required or arising from the terms of this Outlease from the LESSEE to the GOVERNMENT shall be served on or mailed to the office of the GOVERNMENT's designated representative. The GOVERNMENT's designated representative shall be:

Commanding Officer
Northern Division
Naval Facilities Engineering Command
Philadelphia, PA 19112-5094

Q. Payments:

All payments to the GOVERNMENT required under this Outlease shall be made by check or postal money order made payable to the Department of the Navy and delivered to the Designated GOVERNMENT Representative.

R. Interest:

1. Notwithstanding any other clause of this Outlease, all amounts that become payable by the LESSEE to the GOVERNMENT under this Outlease (net of any applicable tax credit under the Internal Revenue Code (26 U.S.C. 1481)) shall bear simple interest from the date due until paid unless paid within 30 days of becoming due. The interest rate shall be the interest rate established by the Secretary of the Treasury as provided in Section 12 of the Contract Disputes Act of 1978 (Public Law 95-563), which is applicable to the period in which the amount becomes due, as provided in paragraph (b) of this clause, and then at the rate applicable for each six-month period as fixed by the Secretary until the amount is paid.

2. Amounts shall be due at the earliest of the following dates:

   a. The date fixed under this Outlease.

   b. The date of the first written demand for payment consistent with this Outlease, including any demand resulting from a default termination.

   c. The date the GOVERNMENT transmits to the LESSEE a proposed supplemental agreement to confirm completed negotiations establishing the amount of debt.

d. If this Outlease provides for revision of prices, the date of written notice to the LESSEE stating the amount of refund payable in connection with a pricing proposal or a negotiated pricing agreement not confirmed by Outlease modification.

3. The interest charge made under this clause may be reduced under the procedures prescribed in 32.614-2 of the Federal Acquisition Regulation in effect on the date of this Outlease.

S. Administration:

The Designated GOVERNMENT Representative specified in Article O of Part I shall, under the direction of the Commander, Naval Facilities Engineering Command, have complete charge of the administration of this Outlease, and shall exercise full supervision and general direction thereof insofar as the interests of the GOVERNMENT are affected.

T. Gratuities:

The GOVERNMENT may, by written notice to the LESSEE, terminate the right of the LESSEE to proceed under this Outlease if it is found after notice and hearing, by the Secretary of the Navy or his duly authorized representative, that gratuities (in the form of entertainment, gifts, or otherwise) were offered or given by the LESSEE or any agent or representative of the LESSEE to any officer or employee of the GOVERNMENT with a view toward securing an agreement or securing favorable treatment with respect to the awarding or amending, or the making of any determinations with respect to the performing of such agreement; provided that the existence of the facts upon which the Secretary or his duly authorized representative makes such finding, shall be in issue and may be reviewed in any competent court. In the event this Outlease is so terminated, the GOVERNMENT shall be entitled (a) to pursue the same remedies against the LESSEE as it could pursue in the event of a breach of contract by the LESSEE, and (b) as a penalty in addition to any other damages it may be entitled by law, to exemplary damages in an amount (as determined by the Secretary or his duly authorized representative) which shall be not less than three nor more than ten times the costs incurred by the LESSEE in providing any such gratuities to any such officer of employee. The rights and remedies of the GOVERNMENT provided in this article shall not be exclusive and are in addition to other rights and remedies provided by law or under this Outlease.

U. Successions and Assignments:

All of the covenants, conditions and obligations contained in this Outlease shall be binding upon and inure to the benefit of the respective successors and assigns of the LESSEE to the same extent as if each successor and assign were in each case named as a party to this Outlease. Any person, corporation or other legal entity acquiring any or all of the rights, title and interest of the LESSEE in and to leasehold estate in the Leased Property shall thereby become liable under and be fully bound by all of the provisions of this Outlease.