4643-282 28-89 m-59335

## ASSIGNMENT OF RENTS AND LEASES

KNOW ALL MEN BY THESE PRESENTS THAT DICK FISCHER DEVELOPMENT NO. 3, INC., an Alaska corporation, having an address at 937 Harvard Avenue East, Seattle, Washington 98102 (hereinafter called "Assignor"), in consideration of ONE AND NO/100 DOLLAR ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, paid by SHAWMUT BANK N.A., TRUSTEE, a national banking association, with an address at One Federal Street, 31st Floor, Boston, Massachusetts 02211, Attention: Senior Corporate Trust Officer (hereinafter called "Assignee"), hereby conveys, transfers and assigns unto Assignee, its successors and assigns, subject to the terms and conditions hereinafter set forth, all the rights, interests and privileges which Assignor, as lessor, has and may have in the leases now existing or hereafter made and affecting the real property described on <u>Exhibit A</u> attached hereto, or any part thereof (the "Land"), as such leases may have been or may from time to time be hereafter modified, extended and renewed, with all rents, income and profits due and becoming due therefrom, including, but not limited to: (i) that certain Agreement to Lease (the "Agreement to Lease") dated as of August 27, 1986, and designated as Contract No. N62472-86-RP-00209, as revised and restated pursuant to Supplemental Agreement No. 3 to Department of the Navy Outlease, Agreement to Lease, and Inlease dated October 24, 1988, and further amended pursuant to Supplemental Agreement No. 4 to Department of the Navy Outlease, Agreement to Lease, and Inlease dated February 21, 1989, between Assignor, as lessor, and the United States of America as represented by the Commanding Officer, Northern Division, Naval Facilities Engineering Command, Philadelphia, Pennsylvania, or its other authorized representative(s) (the "Government"), as lessee; (ii) that certain Inlease to be entered into by and between Assignor and the Government, (the "Inlease") as provided in and in the form of <u>Exhibit D</u> attached to the Agreement to Lease; and (iii) any other leases now existing or hereafter made and affecting the Property (as hereinafter defined), including, without limitation, any lease entered into by and between Assignor and the Government in connection with the phased occupancy arrangements set forth in Section 7 of the Agreement to Lease (any such lease, an "Interim Lease"), as such leases may have been or may from time to time be hereafter modified, extended and renewed, with the rents, income and profits due and becoming due therefrom, including any payments or compensation in connection with the termination or modification thereof. Assignor will, on request of Assignee, execute assignments, on substantially the same terms and conditions as those set forth herein, of any future leases affecting all or any

---

This instrument prepared by
and when recorded, return to:
Frank E. Stevenson, II
Frank E. Stevenson, II, Esq.
LOCKE PURNELL RAIN HARRELL
325 N. St. Paul
Suite 3000
Dallas, Texas 75201-3989

pd 50

011271
RECORDED
MONMOUTH COUNTY
CLERKS OFFICE
10:41 AM
FEB 28 1989
JANE G. CLAYTON
COUNTY CLERK
FREEHOLD N.J.

INLEASE ________
BETWEEN
THE UNITED STATES OF AMERICA
AND
DICK FISCHER DEVELOPMENT #3, INC.

THIS INLEASE is made and entered into as of the 30th day of APRIL 1990 by and between Dick Fisher Development #3, Inc., Seattle, WA (hereinafter referred to as "Developer") and the United States of America represented by Commanding Officer, Northern Division, Naval Facilities Engineering Command (hereinafter referred to as "Government").

ARTICLE I

THE PREMISES

In consideration of the mutual benefits accruing to the parties hereto, and of the covenants, agreements, and obligations set out hereafter, the Developer hereby leases to the Government all of the improvements constructed and provided on certain land situated in the Township of Colts Neck, County of Monmouth, and State of New Jersey, and particularly described in Exhibit "A" attached hereto, said Land and Improvements hereinafter collectively referred to as the Premises. The Premises shall be used for housing and other purposes associated therewith. The Premises are leased pursuant to the authority of 10 U.S.C. 2828(g) and shall be used only as military family housing.

ARTICLE II

THE TERM

The term of this Inlease shall be 20 years commencing on MAY 1, 1990, and terminating no later than APRIL 30, 2011. Occupancy by the Government of any portion of the Premises prior to completion in its entirety shall be subject to negotiations between the Government and the Developer and to the issuance of an Interim Inlease. (See "Phased Occupancy" provisions of the Agreement to Lease.) The term of this Inlease may be extended by agreement of the parties under the same terms and conditions as the original lease with the exception of rent (see ARTICLE IV), and any other such terms for each extension period as may be appropriate. Such extensions shall be in increments of ten years, or for such other period as may be negotiated. Commensurate with an extension of this Inlease, the Government agrees to grant the developer a similar extension of the initial outlease term and to modify the effective date of the subsequent outlease (as identified in provision B of the outlease) so that the subsequent outlease term becomes effective upon the final termination of the extended inlease.

EXHIBIT D TO
AGREEMENT TO LEASE

## ARTICLE III

### ASSIGNMENT AND SUBLETTING

The Government shall have the right to sublet all or any part of the Premises. This Inlease or any part thereof shall not be conveyed, transferred, assigned or sold (including but not limited to sales at foreclosure) without the prior written approval of the Government, which approval shall not be unreasonably or arbitrarily withheld, so long as such Assignee or Purchaser has both experience/expertise in the development, management and operation of residential housing (or if it does not have such experience/expertise, it retains a management agent which does) and a net worth as determined acceptable by the Government and consists of reputable individuals who have no conflicts of interest vis-a-vis the Federal Government. The assumption of the Developer's rights and obligations hereunder by a Mortgagee, as described in Article XIV hereof, shall not be considered an assignment of this Inlease.

## ARTICLE IV

### RENT

Subject to the provisions of Article VIII, the Government shall pay to the Developer an annual Rental as set forth in Exhibit "B" of this Inlease for each housing unit leased, payable monthly in arrears. The Rental shall consist of a shelter rent and a maintenance rent (both of which shall be separately identified in Exhibit "B"). Rent for a lesser period shall be prorated. However, the parties will rent at fair market rental for any extension period.

That portion of the annual Rental attributable to maintenance shall be increased or decreased at the commencement of each year of the Inlease after the first year of the Inlease and ending with the twentieth year of the Inlease by the increase or decrease in the Housing, Shelter, Maintenance and Repair Index for the preceding twelve months of the "Economic Indicators" prepared for the Joint Economic Committee of Congress by the Council of Economic Advisors as published by the Government Printing Office so as to reflect any increases or decreases in costs incurred by Developer in maintaining the Premises in accordance with the provision of this Lease.

The Navy agrees to include in its annual budget sufficient funds to pay the rent. The Navy further agrees that it will use any legally available funds to pay rent. If the Government fails to pay rent due to a failure to appropriate funds, the Government agrees for a period of 90 days, that it will not, except in an emergency, construct, purchase, lease, or contract for use by the Department of the Navy any facilities in the Colts Neck, N.J. area which are functionally similar to the premises.

It is expressly understood and agreed to by the Developer that the obligations of the Government to make any payments under this Inlease is subject to the availability of appropriations for that purpose.



20 OCT 1988

Rent checks shall be made payable to: Richard Fischer Development #3, Inc., 937 Harvard Avenue, East Seattle, Washington 98102.

ARTICLE V

RIGHT OF FIRST REFUSAL

At any time during the term of this Inlease and upon expiration or earlier termination, should Developer receive from a third party within 6 months of said expiration, a bona fide offer to purchase the Premises, or any portion thereof, at a specified price, whether such price be first fixed by Developer or the third party, and Developer shall decide to sell the same for such amount, Developer shall promptly give to the Government notice of the terms of such offer and of Developer's willingness to sell for the price offered, and Government shall have the right of first refusal to purchase said Premises at such a price; such option to be exercised within ninety (90) days after Government receives notice from Developer. In the event Government shall not give Developer notice, within said ninety (90) day period, of it's election to purchase for the amount specified in said offer, Developer may thereafter sell said Improvements to the party making the offer. If for any reason, said Improvements are not sold to such party, notice of any subsequent bona fide offers, acceptable to Developer, shall be given to Government upon the same terms and conditions for acceptance or rejection as herein above provided. It is the express and specific intent of the parties hereto that this provision and the right of the Government to exercise its purchase option does not apply to any mortgage, encumbrance, deed of trust, or any other transfer made exclusively or solely for the purpose of securing a loan or other indebtedness. However, in event of a default on a mortgage, encumbrance, deed of trust, or other such indebtedness, the creditor or any assignee thereof who shall succeed to the interest of the Developer shall be subject to the provisions of this Inlease and the Government's right of first refusal.

ARTICLE VI

UTILITIES, RATES, CHARGES

The Government shall pay all rates and charges which may become payable for water, gas, electric current, oil or other forms of power, fuel or utility used or utilized by the Government on the leased Premises during the full terms of this Inlease. Determination of such charges shall be substantiated by metering or submetering.

ARTICLE VII

ALTERATIONS

The Government shall have the right, during the existence of this Inlease, to make alterations, attach fixtures and erect additions, structures or signs in or upon the Premises. However, no such changes shall be made to any improvement without the written consent of the Developer. Such consent shall not be unreasonably withheld. Structural additions shall become property of Developer and Government has no obligation to remove or restore to original condition. Any non structural alterations and improvements which are made shall remain the property of the Government and may be removed or disposed of by the Government or at the option of the Government, abandoned in place prior to the expiration or upon termination of this Inlease or renewal thereof.

ARTICLE VIII

MAINTENANCE, REPLACEMENTS, REHABILITATION, REDECORATION, AND REPAIRS

(a) The Developer, at its sole cost and expense, shall operate and perform all maintenance, repairs, replacements, rehabilitation and redecoration of the Premises in accordance with the requirements, procedures, and criteria set forth in Exhibit "C" of this Inlease (Maintenance, Repair and Operational Services Standards Annex). Should Developer fail to provide the necessary maintenance, repairs, replacements, rehabilitation and redecoration as set forth in Exhibit "C", the Government, at its own option, may avail itself of the remedies or other means of redress specified in Exhibit"C", or available under law including, but not limited to, performing such services or making such repairs, replacements, rehabilitation, maintenance and/or redecoration at its own cost, and for which the Government will be compensated from the Repair and Replacement Fund upon a showing by the Government that work has been or will be performed, for services rendered in accordance with this Article and that costs have actually been or will be incurred by the Government in the performance of such work or provision of such services. Any such assessments made against the Fund for compensation of the Government, shall be made only on the agreement of both the Contracting Officer and the Developer's representative or after the Developer is advised of a determination by the Contracting Officer. Any disagreement shall be subject to the Disputes provisions of Article XVI of this lease.

(b) The Developer will establish a Repair and Replacement Fund to which the Developer agrees to contribute the sum of $25,000 annually for a period not to exceed ten (10) years commencing with the delivery and acceptance of this project by the Navy. After the initial ten (10) year

period, the Developer may expend proceeds of the fund for replacement of building components. During the full term of this Inlease, and regardless of the amount of money residing in the Repair and Replacement Fund, the Developer's maintenance obligation will be secured either by a letter of credit or bond in an amount equal to $250,000.

(c) In addition to the rents stipulated in Article IV of this Inlease, the Government, at its option, may pay Developer an incentive fee not to exceed 5% of the maintenance rental, for all housing units, for the period of time for which Developer's performance of the obligations and responsibilities contained herein are evaluated and found by the Government to substantially exceed the established standards. The amount of the incentive fee shall be determined by an Incentive Fee Board based upon the performance of the developer in operating the premises in accordance with its obligation.

Exhibit "C" contains the provisions to establish the make up of the Board and the procedures for determining such bonuses.

## ARTICLE IX

## LOSS, DAMAGE, AND INSURANCE

The Developer shall in any event and without prejudice to any other rights of the Government bear responsibility for loss or damage by fire; lightning; storm; tempest; explosion; impact; aircraft; riot; civil commotion; bursting or overflowing of water tanks, apparatus or pipes; flood; labor disturbances; earthquake; malicious damage (other than Government-caused) or any other casualty or act of God; and shall maintain at the expense of the Developer at all times during the term of this Inlease insurance coverage against the risks enumerated above with a reputable insurance company and shall ensure that the Government is named as a co-insured on any such policy. In no circumstances will the Developer be entitled to assign to any third party rights of action which Developer may have against the Government.

## ARTICLE X

## DAMAGE OR DESTRUCTION BY FIRE OR OTHER CAUSES

If any of the housing units of the Improvements are destroyed by fire or other casualty, the Government may at its sole option terminate this Inlease immediately in respect to the destroyed housing units and if so terminated no rent shall accrue to the Developer after the date of such destruction. In case of only partial destruction or damage to a housing unit such as to render it untenantable in the judgment of the Government, the Government may at its sole option suspend this Inlease for that housing unit by giving written notice to the Developer and if so suspended no rent shall accrue to the Developer after the date of such partial destruction or damage; until the unit is restored and accepted for occupancy by Government in accordance with Exhibit"C".

## ARTICLE XI

### NOTICES

All notices, payments, and other correspondence required under or arising from the terms of this Inlease, from the Government to the Developer shall be served on or mailed to the Developer or any change in the office notified in writing to the Government. All notices, payment, or other correspondence required or arising from the terms of this Inlease from the Developer to the Government shall be served on or mailed to the office of the Government's designated representative. The Government's designated representative is: Commanding Officer, Northern Division, Naval Facilities Engineering Command, Philadelphia, PA 19112-5094. The address of the Developer is: 937 Harvard Avenue, East Seattle, Washington 98102.

## ARTICLE XII

### COVENANT OF TITLE

Developer covenants that it has lawful authority and title to make this Inlease for the term aforesaid, that it will put the Government into complete and exclusive possession of the Premises free from all orders and notices of violations of any public and quasi-public authority, and that, if the Government shall pay the rental and perform all the covenants and provisions of this Inlease, the Government shall during the term hereby demised, freely, peaceably, and quietly occupy and enjoy the full possession of the Premises hereby demised and the tenements, hereditaments, and appurtenances thereto without molestation or hindrance, lawful or unlawful, of any person whomsoever: and if at any time during the term of this Inlease, the authority or title of the Developer shall fail or be discovered not to enable it to grant the term hereby demised, the Government shall have the option to annul and void this Inlease, and thereafter no rent shall become due or payable to the Developer, their successors or assigns.

## ARTICLE XIII

### OFFICIALS NOT TO BENEFIT

No member of or delegate to Congress, or resident commissioner of the United States of America, shall be admitted to any share or part of this Inlease, or to any benefit that may arise from it. However, this clause does not apply to this Inlease to the extent that this Inlease is made with a corporation for the corporation's general benefit.

## ARTICLE XIV

### MORTGAGE OF PREMISES

A. Except as provided herein, the Developer shall not: (i) engage in any financing or other transaction creating any mortgage upon the Premises, (ii) place or suffer to be placed upon the Premises any lien or other encumbrance; or (iii) suffer any levy or attachment to be made on the Developer's interest in the Premises, other than such levy or attachment as may result from a foreclosure of a mortgage. Any such mortgage, encumbrance or lien shall be deemed to be a violation of this covenant on the date of its execution or filing of record regardless of whether or when it is foreclosed or otherwise enforced.

B. During the term of this Inlease, the Developer may encumber its interest in the Premises by way of one or more loans, secured by a mortgage. The proposed holder of any such mortgage must be approved by the Government prior to the execution of such loan, which shall not be unreasonably withheld. Any loan may be further secured by a conditional assignment of this Inlease by the Developer to the mortgagee. The Government agrees to execute an Estoppel Certificate and any other similar documentation as may reasonably be required by the mortgagee so as to give its consent to the said conditional assignment of this Inlease and to certify as to the status of this Inlease and to the performance of the Developer hereunder as of the date of such certification. Notwithstanding any foreclosure, the Developer shall remain liable for the performance of all the terms, covenants and conditions of this Inlease which by the terms hereof are to be carried out and performed by the Developer.

C. Promptly after assigning or encumbering the Premises, the Developer shall furnish the Government a written notice setting forth the name and address of such mortgagee. Further, the Developer shall notify the Government promptly of any lien or encumbrance which has been created or attached to the Premises or to the Developer's interest in the Premises whether by act of the Developer or otherwise of which the Developer itself has notice.

D. If a mortgagee or purchaser at foreclosure of the mortgage shall acquire the Developer's interest in the Premises by virtue of the default by the Developer under the mortgage or otherwise, this Inlease shall continue in full force and effect so long as the mortgagee or purchaser at foreclosure is not in default hereunder. The mortgagee or purchaser at foreclosure may not appoint an agent or nominee to operate the Premises on its behalf without obtaining the prior written approval of the Government's designated representative; such approval shall not be withheld so long as such proposed agent/nominee has experience/expertise in the development, management and operation of residential housing as determined acceptable by the Government. For the period of time during which the mortgagee or any purchaser at foreclosure of a mortgage holds the Developer's interest in the Premises, the mortgagee or such purchaser shall become liable and fully bound by the provisions of this Inlease.

E. The term "mortgage" shall include Deed of Trust and the term "mortgagee" shall include all parties to a Deed of Trust except the Developer.

ARTICLE XV

RIGHTS AND DUTIES OF MORTGAGEES

A. With respect to the mortgagees, the Government agrees that the following shall apply:

1. If requested by a mortgagee which shall have duly registered in writing with the Government its name and address, any notice with respect to a default or a termination of this Inlease from the Government to the Developer shall be simultaneously delivered to such mortgagee at its registered address, and in the event of any such registration no notice of default or termination of this Inlease given by the Government to the Developer shall be deemed legally effective until and unless like notice shall have been given by the Government to such mortgagee.

2. Such mortgagee entitled to such notice shall have any and all rights of the Developer with respect to the curing of any default hereunder by the Developer.

3. The Government will not accept any cancellation by Developer or enter into any material modification of this Inlease without the prior written consent thereto of each mortgagee who shall become entitled to notice as provided herein; provided, however that the foregoing shall not apply to any right the Government may have to terminate this Inlease pursuant to the terms hereof. It is also agreed that the Developer shall provide any such mortgagee with notice of any proposed modification.

B. If the Government shall elect to terminate this Inlease by reason of any default described herein, each mortgagee shall have become entitled to notice as provided in this Paragraph and shall not only have any and all rights of the Developer with respect to curing of any default, but shall also have the right to postpone and extend the specified date for the termination of this Inlease (hereinafter called the "Mortgagee's Right to Postpone") in any notice of termination by the Government to the Developer (hereinafter called "Termination Notice") subject to the following conditions:

1. Such mortgagee shall (i) give the Government written notice of the exercise of the Mortgagee's Right to Postpone prior to the date of termination specified by the Government in the Termination Notice; and (ii) simultaneously pay to the Government all amounts required to cure all defaults then existing (as of date of the exercise of Mortgagee's Right to Postpone) which may be cured by the payment of a sum of money.

2. Such Mortgagee shall (i) pay such sums and charges due, if any, hereunder during the period from the date of the exercise of Mortgagee's Right to

Postpone and thereafter during the period of postponement; (ii) promptly initiate and diligently pursue all reasonable and necessary steps to acquire the Developer's interest in this Inlease and the Improvements; and (iii) promptly undertake to cure, diligently prosecute and, as soon as reasonably possible, complete the curing of any other default of the Developer which is susceptible of being cured by such Mortgagee.

3. The mortgagee's Right to Postpone shall extend the date for the termination of this Inlease specified in the Termination Notice for a period of not more than six (6) months. If at the end of said six (6) months' period such mortgagee shall be actively and in good faith engaged in steps to acquire the Developer's interest in this Inlease and the Improvements, the time for such mortgagee to comply with the provisions of this Article shall be extended, for such reasonable period as may be necessary under the circumstances provided that such mortgagee uses its best efforts and continues to diligently pursue all reasonable and necessary steps to acquire the Developer's interest in the Premises.

4. If, before the date specified for the termination of this Inlease as extended by such mortgagee's exercise of mortgagee's Right to Postpone, (i) the Developer shall be duly removed from possession; (ii) the assumption required by Article III of performance and observance of the covenants and conditions herein contained on the Developer's part to be performed shall be delivered to the Government by the mortgagee, or its nominee; and (iii) the mortgagee shall have complied with all obligations on Government's part to be performed hereunder and no further default shall have occurred hereunder which shall not have been cured within the periods of time after notice above provided for, then and in such event, all defaults under this Inlease shall be deemed to have been cured, and the Government's Termination Notice shall be deemed to have been withdrawn.

C. Nothing herein contained shall be deemed to impose any obligation on the part of the Government to deliver physical possession of the Demised Premises to such holder of a mortgagee.

D. If more than one mortgagee shall seek to exercise any of the rights provided for in this Article, the holder of the mortgage having priority of lien over the other mortgagees shall be entitled, as against the others, to exercise such rights. Should a dispute arise among mortgagees regarding the priority of lien the mortgagees must prove to the satisfaction of the Government that they have settled this dispute.

E. The mortgagee may not appoint an agent or nominee to manage the premises on its behalf without first obtaining the written approval of the Government. Such approval shall not be withheld so long as such agent/nominee has experience/expertise in the management and operation of residential developments similar to the Premises, as determined by the Government.



8

ARTICLE XVI

DISPUTES

A. This Agreement is subject to the Contract Disputes Act of 1978 (41 U.S.C. 601-613) (the Act).

B. Except as provided in the Act, all disputes arising under or relating to this Inlease shall be resolved under this clause.

C. "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the Developer seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph (d)(2) below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

D. 1. A claim by the Developer shall be made in writing and submitted to the Contracting Officer for a written decision. A claim by the Government against the Developer shall be subject to a written decision by the Contracting Officer.

2. For Developer claims exceeding $50,000, the Developer shall submit with the claim a certification that: a. The claim is made in good faith; b. Supporting data are accurate and complete to the best of the Developer's knowledge and belief; and c. The amount requested accurately reflects the contract adjustment for which the Developer believes the Government is liable.

3. a. If the Developer is an individual, the certification shall be executed by that individual.
   b. If the Developer is not an individual, the certification shall be executed by-

      (1) A senior company official in charge at the Developer's plant or location involved; or

      (2) An officer or general partner of the Developer having overall responsibility for the conduct of the Developer's affairs.

E. For Developer claims of $50,000 or less, the Contracting Officer must, if requested in writing by the Developer, render a decision within 60 days of the request. For Developer-certified claims over $50,000, the Contracting Officer must, within 60 days, decide the claim or notify the Developer of the date by which the decision will be made.

F. The Contracting Officer's decision shall be final unless the Developer appeals or files a suit as provided in the Act.

G. The Government shall pay interest on the amount found due and unpaid from (1) the date the Contracting Officer receives the claim (properly certified if required), or (2) the date payment otherwise would be due, if that date is later, until the date of payment. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable to the period during which the Contracting Officer receives the claim and then at the rate applicable for each 6-month period is fixed by the Treasury Secretary during the pendency of the claim.

H. The Developer shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under or relating to the contract, and comply with any decision of the Contracting Officer.

## ARTICLE XVII

## GRATUITIES

A. The right of the Developer to proceed may be terminated by written notice if the agency head or a designee determines that the Developer, its agent, or another representative-

1. Offered or gave a gratuity (e.g., an entertainment or gift) to an officer, official, or employee of the Government; and

2. Intended, by the gratuity, to obtain a contract or favorable treatment under a contract.

B. The facts supporting this determination may be reviewed by any court having lawful jurisdiction.

C. If this Inlease is terminated under paragraph (a) above, the Government is entitled:

1. To pursue the same remedies as in a breach of the contract; and

2. In addition to any other damages provided by law, to exemplary damages of not less than 3 nor more than 10 times the cost

incurred by the Developer in giving gratuities to the person concerned, as determined by the agency head or a designee. (This subparagraph (c)(2) is applicable only if this contract uses money appropriated to the Department of Defense.)

D. The rights and remedies of the Government provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this contract.

ARTICLE XVIII

COVENANT AGAINST CONTINGENT FEES

A. The Developer warrants that no person or agency has been employed or retained to solicit or obtain this Inlease upon an agreement or understanding, for a contingent fee, except bona fide employees or agency. For breach or violation of this warranty, the Government shall have the right to annul this Inlease without liability or in its discretion to deduct from the lease price or consideration or otherwise recover, the full amount of the contingent fee.

B. "Bona fide agency," as used in this clause, means an established commercial or selling agency, maintained by a contractor for the purpose of securing business, that neither exerts nor proposes to exert improper influence to solicit or obtain Government contracts nor holds itself out as being able to obtain any Government contract or contracts through improper influence.

"Bona fide employee," as used in this clause, means a person employed by a contractor and subject to the contractor's supervision and control as to time, place, and manner of performance, who neither exerts nor proposes to exert improper influence to solicit or obtain Government contracts nor holds out as being able to obtain any Government contract or contracts through improper influence.

"Contingent fee," as used in this clause, means any commission, percentage, brokerage, or other fee that is contingent upon the success that a person or concern has in securing a Government contract.

"Improper influence," as used in this clause, means any influence that induces or tends to induce a Government employee or officer to give consideration, or to act regarding a Government contract, on any basis other than the merits of the matter.

ARTICLE XIX

EXAMINATION OF RECORDS

A. This clause applies if this lease exceeds $10,000 and was entered into

by negotiation.

B. The Comptroller General of the United States or a duly authorized representative from the General Accounting Office shall, until 3 years after final payment under this contract or for any shorter period specified in Federal Acquisition Regulation (FAR) Subpart 4.7, Developer Records Retention, have access to and the right to examine any of the Developer's directly pertinent books, documents, papers, or other records involving transactions related to this contract.

C. The Developer agrees to include in first-tier subcontracts under this contract a clause to the effect that the Comptroller General or a duly authorized representative from the General Accounting Office shall, until 3 years after final payment under the subcontract or for any shorter period specified in FAR Subpart 4.7, have access to and the right to examine any of the subcontractor's directly pertinent books, documents, papers, or other records involving transactions related to the subcontract. "Subcontract," as used in this clause, excludes (1) purchase orders not exceeding $10,000 and (2) subcontracts or purchase orders for public utility services at rates established to apply uniformly to the public, plus any applicable reasonable connection charge.

D. The periods of access and examination in paragraphs (b) and (c) above for records relating to (1) appeals under the Disputes clause, (2) litigation or settlement of claims arising from the performance of this contract, or (3) costs and expenses of this contract to which the Comptroller General or a duly authorized representative from the General Accounting Office has taken exception shall continue until such appeals, litigation, claims, or exceptions are disposed of.

## ARTICLE XX

## ASSIGNMENT OF CLAIMS

A. The Developer, under the Assignment of Claims Act, as amended, 31 U.S.C. 203, 41 U.S.C. 15 (hereafter referred to as the "the Act"), may assign its rights to be paid amounts due or to become due as a result of the performance of this Inlease to a bank, trust company, or other financing institution, including any Federal lending agency. The assignee under such an assignment may thereafter further assign or reassign its right under the original assignment to any type of financing institution described in the preceding sentence.

B. Any assignment or reassignment authorized under the Act and this clause shall cover all unpaid amounts payable under this Inlease, and shall not be made to more than one party, except that an assignment or reassignment may be made to one party as agent or trustee for two or more parties participating in the financing of this contract.

C. The Developer shall not furnish or disclose to any assignee under this Inlease any classified document (including this agreement) or information related to work under this Inlease until the Contracting Officer authorizes such action in writing.

ARTICLE XXI

EQUAL OPPORTUNITY CLAUSE

(The following clause is applicable unless this Inlease is exempt under the rules, regulations, and relevant orders of the Secretary of Labor (41 CFR, ch. 60)).

A. If, during any 12-month period (including the 12 months preceding the award of this contract), the Developer has been or is awarded non-exempt Federal contracts and/or subcontracts that have an aggregate value in excess of $10,000 the Developer shall comply with subparagraphs (b)(1) through (11) below. Upon request, the Developer shall provide information necessary to determine the applicability of this clause.

B. During performing this Inlease, the Developer agrees as follows:

1. The Developer shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, or national origin.

2. The Developer shall take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, color, religion, sex, or national origin. This shall include, but not be limited to, (i) employment, (ii) upgrading, (iii) demotion, (iv) transfer, (v) recruitment or recruitment advertising, (vi) layoff or termination, (vii) rates of pay or other forms of compensation, and (viii) selection for training, including apprenticeship.

3. The Developer shall post in conspicuous places available to employees and applicants for employment the notices to be provided by the Contracting Officer that explain this clause.

4. The Developer shall, in all solicitations or advertisement for employees placed by or on behalf of the Developer, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

5. The Developer shall send, to each labor union or representative of workers with which it has a collective bargaining agreement or other contract or understanding, the notice to be provided by the

Contracting Officer advising the labor union or workers' representative of the Developer's commitments under this clause, and post copies of the notice in conspicuous places available to employees and applicants for employment.

6. The Developer shall comply with Executive Order 11246, as amended, and the rules, regulations, and orders of the Secretary of Labor.

7. The Developer shall furnish to the contracting agency all information required by Executive Order 11246, as amended, and by the rules, regulations, and orders of the Secretary of Labor. Standard Form 100 (EEO-1), or any successor form, is the prescribed form to be filed within 30 days following the award, unless filed within 12 months preceding the date of award.

8. The Developer shall permit access to its books, records, and accounts by the contracting agency or the Office of Federal Contract Compliance Programs (OFCCP) for the purposes of investigation to ascertain the Developer's compliance with the applicable rules, regulations, and orders.

9. If the OFCCP determines that the Developer is not in compliance with this clause or any rule, regulation, or order of the Secretary of Labor, this contract may be canceled, terminated, or suspended in whole or in part and the Developer may be declared ineligible for further Government contracts, under the procedures authorized in Executive Order 11246, as amended. In addition, sanctions may be imposed and remedies invoked against the Developer as provided in Executive Order 11246, as amended, the rules, regulations, and orders of the Secretary of Labor, or as otherwise provided by law.

10. The Developer shall include the terms and conditions of subparagraph (b)(1) through (11) of this clause in every subcontract or purchase order that is not exempted by the rules, regulations, or orders of the Secretary of Labor issued under Executive Order 11246, as amended, so that these terms and conditions will be binding upon each subcontractor or vendor.

11. The Developer shall take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing these terms and conditions, including sanctions for noncompliance; provided, that if the Developer becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of any direction, the Developer may request the United States to enter into the litigation to protect the interests of the United States.

C. Notwithstanding any other clause in this contract, disputes relative to this clause will be governed by the procedures in 41 CFR 60-1.1.

## ARTICLE XXII

## FACILITIES NONDISCRIMINATION

A. As used in this section, the term "facility" means stores, shops, restaurants, cafeterias, restrooms, and any other facility of a public nature in the building in which the space covered by this Inlease is located.

B. The Developer agrees that he will not discriminate by segregation or otherwise against any person or persons because of race, color, religion, sex, or national origin in furnishing, or by refusing to furnish, to such person or persons the use of any facility, including any and all services, privileges, accommodations, and activities provided thereby. Nothing herein shall require the furnishing to the general public of the use of any facility customarily furnished by the Developer solely to occupants, their employees, customers, patients, clients, guests and invitees.

C. It is agreed that by the Developer's noncompliance, the Government may take appropriate action to enforce compliance, may terminate this Inlease, or may pursue such other remedies as may be provided by law. In the event of termination, the Developer shall be liable for all excess costs of the Government in acquiring substitute space, including but not limited to the cost of moving to such space. Substitute space shall be obtained in as close proximity to the Developer's building as is feasible and moving costs will be limited to the actual expenses thereof as incurred.

D. It is further agreed that from and after the date hereof the Developer will, at such time as any agreement is to be entered into or a concession is to be permitted to operate, include or require the inclusion of the foregoing provisions of this section in every such agreement or concession pursuant to which any person other than the Developer operates or has the right to operate any facility. Nothing herein contained, however, shall be deemed to require the Developer to include or require the inclusion of the foregoing provisions of this section in any existing agreement or concession arrangement or one in which the leasing party other than the Developer has the unilateral right to renew or extend the agreement or arrangement, until the expiration of the existing agreement or arrangement and unilateral right to renew or extend. The Developer also agrees that it will take any and all lawful actions as expeditiously as possible, with respect to any such agreement as the leasing agency may direct, as a means of enforcing the intent of this section, including, but not limited to, termination of the agreement or concession and institution of court action.

## ARTICLE XXIII

### MISCELLANEOUS PROVISIONS

A. If this Inlease or any term or provision thereof or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Inlease, or the application of such term or provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Inlease shall be valid and be enforced to the fullest extent permitted by law.

B. All of the covenants, conditions and obligations contained in this Inlease shall be binding upon and inure to the benefit of the respective successors and assigns of the Developer to the same extent as if each successor and assign were in each case named as a party to this Inlease. Any person, corporation or other legal entity acquiring any or all of the rights, title and interest of the Developer in and to leasehold estate in the Premises shall thereby become liable under and be fully bound by all of the provisions of this Inlease.

C. The parties herein agree that nothing herein nor shall any prior agreements between the Developer and the Government be deemed or construed by the parties hereto or by any third party as creating or authorizing the creation of any partnership or joint venture between the Government and the Developer, it being understood and agreed that no provision of this Inlease, nor any act of the Government or the Developer hereafter, shall be deemed to create any relationship between the Government and the Developer other than the relationship of tenant and landlord.

D. The specified remedies to which the Government may resort under the terms of this Inlease are cumulative and are not intended to be exclusive of any other remedies or means of redress to which the Government may be lawfully entitled in case of any breach or threatened breach by the Developer of any provisions of this Inlease. The failure of the Government to insist in any one or more cases upon the strict performance of any of the covenants of this Inlease on the part of the Developer to be performed or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future of such covenant or option. Payment by the Government of the rental with knowledge of the breach by the Developer of any covenant shall not be deemed a waiver of such breach and no waiver by the Government of any provisions of this Inlease shall be deemed to have been made unless expressed in a writing signed by a duly authorized agent of the Government.

E. The Developer shall comply with all laws, codes and ordinances applicable to the operation of the Premises, and at its own expense, to obtain all necessary permits and related items.



9'

IN WITNESS WHEREOF, the parties hereto have hereunto subscribed their names as of the date first above written.

Witness

Witness

Witness

DEVELOPER

By

President
Title

UNITED STATES OF AMERICA

By

MARK N. LUNDGREN
Realty Officer, Real Estate Division
Real Estate Contracting Officer

Payment will be made by ____________________

Appropriation Data:

IN WITNESS WHEREOF, the parties hereto have hereunto subscribed their names as of the date first above written.

DEVELOPER

Witness

By

Witness

Title
president

UNITED STATES OF AMERICA

Witness

By

MARK N. LUNDGREN
Realty Officer, Real Estate Division
Real Estate Contracting Officer

Payment will be made by ______________________

Appropriation Data:

CORPORATE CERTIFICATION

(If Developer is a Corporation, the following certificate shall be executed by the Secretary or Assistant Secretary.)

I, Teri Fischer, certify that I am the Corporate Secretary of the Corporation named as Developer in the attached Inlease; that said Corporation is chartered in the State of Alaska and authorized to do business in the State of New Jersey; that R.W. Fischer, who signed said Inlease on behalf of the Developer, was then President of said Corporation; that said Inlease was duly signed for and in behalf of said Corporation by authority of its governing body, and is within the scope of its corporate powers.

Teri A. Fischer

SIGNATURE

(Corporate Seal)





9t

STATE OF WASHINGTON )

) To-wit

COUNTY OF KING )

I, Marcie Furnari, a Notary Public in and for the State at Large as aforesaid, do hereby certify that R.W. Fischer, whose name as such is signed to the foregoing Agreement to Lease, bearing date of the __ day of __________, 198_, has this day acknowledged the same before me in the City aforesaid.

MARCIE FURNARI NOTARY PUBLIC STATE OF WASHINGTON COMMISSION EXPIRES JUL. 26, 1991

Given under my hand this 7th day of October, 1988.

Marcie Furnari
Notary Public

My commission expires: 7-26-91

(SEAL)

COMMONWEALTH OF PENNSYLVANIA)

) To-wit

COUNTY OF PHILADELPHIA )

I, Michael Thomas Dunn, a Notary Public in and for the State at Large as aforesaid, do hereby certify that Mark N. Lundgren whose name as such is signed to the foregoing Agreement to Lease, bearing date of the 30th day of April, 1990, has this day acknowledged the same before me in the City aforesaid.

Given under my hand this 30th day of April, 1990.

Michael Thomas Dunn
Notary Public

NOTARIAL SEAL
Michael Thomas Dunn, Notary Public
City of Philadelphia, Phila. County
My Commission Expires June 20, 1992

My commission expires: __________

(SEAL)





9.

## CORPORATE CERTIFICATION

(If Developer is a Corporation, the following certificate shall be executed by the Secretary or Assistant Secretary.)

I, Beverley M. Sarra, certify that I am the Corporate Assistant Secretary of the Corporation named as Developer in the attached Inlease; that said Corporation is chartered in the State of Alaska and authorized to do business in the State of New Jersey; that R. Jr. Fischer, who signed said Inlease on behalf of the Developer, was then President of said Corporation; that said Inlease was duly signed for and in behalf of said Corporation by authority of its governing body, and is within the scope of its corporate powers.

Beverley M. Sarra
SIGNATURE

(Corporate Seal)

STATE OF WASHINGTON )

) To-wit

COUNTY OF KING )

I, Beverley Sarn, a Notary Public in and for the State at Large as aforesaid, do hereby certify that R. W. Fischer, whose name as such is signed to the foregoing Agreement to Lease, bearing date of the 1 day of October, 1988, has this day acknowledged the same before me in the City aforesaid.

Given under my hand this 1 day of May, 1990.

Beverley M. Sarn

Notary Public

My commission expires: November 28, 1994

(SEAL)

COMMONWEALTH OF PENNSYLVANIA)

) To-wit

COUNTY OF PHILADELPHIA )

I, Michael Thomas Dunn, a Notary Public in and for the State at Large as aforesaid, do hereby certify that Mark N. Lundgren whose name as such is signed to the foregoing Agreement to Lease, bearing date of the 30th day of April, 1990, has this day acknowledged the same before me in the City aforesaid.

Given under my hand this 30th day of April, 1990.

Michael Thomas Dunn

Notary Public

My commission expires:

NOTARIAL SEAL
Michael Thomas Dunn, Notary Public
City of Philadelphia, Phila. County
My Commission Expires June 20, 1992

(SEAL)