**Preston|Gates|Ellis & Rouvelas|Meeds LLP**

William A. Shook
billsh@prestongates.com
202-661-6256

August 23, 2006

VIA Facsimile and First Class Mail

Mr. Matthew D. Kurtz
Business Line Coordinator
Real Estate Services
Real Estate Contracting Officer
Department of the Navy
Naval Facilities Engineering Command, Mid-Atlantic
9742 Maryland Avenue
Norfolk, VA 23511-3095

Re: Contract Disputes Act Claim – Lease No. N62472-86-RP-00209

Dear Mr. Kurtz:

Laurelwood Homes, LLC, ("Laurelwood Homes"), by and through undersigned counsel, hereby submits a claim pursuant to the Contract Dispute Act and pursuant to Article XVI Disputes of Lease No. N62472-86-RP-00209 (the "Lease") in the amount of $13,659.50, plus interest. We hereby request a written decision within sixty (60) days.

*Basis of Claim*

By invoice submissions of April 11, 206, June 5, 2006, and July 28, 2006, Laurelwood Homes submitted requests for payment for vandalism caused by individual(s) on the Laurelwood Homes property with the exclusive permission of the government. Attachment 1. The Laurelwood Homes property is located inside the secure gates of Naval Weapons Station Earle and only those individuals with the permission of the government are permitted access to the Laurelwood Homes property.

As noted in your letter of August 22, 2006, Section IX of the Lease does provide that Laurelwood Homes is responsible for certain losses and damages. However, that same provision provides for an exception, that being "other than Government-caused". Laurelwood Homes has obtained the necessary insurance as required by the Lease, but that insurance does not cover government-caused damage. In this instance and consistent with the past interpretation of the Lease, the vandalism damage has been caused by individuals with the permission to be on the Laurelwood Homes site and by breach of the government requirement to reasonably maintain

protection of the Laurelwood Homes property of which Laurelwood Homes has provided notice on several occasions during the past year.

Part II, Paragraph E.2. Utilities and Services, states:

> During any period covered by the Inlease, the Government shall also furnish, at no cost to the LESEE, fire protection, **police protection**, snow removal on the roads, and refuse collection.

Emphasis added. As such, acts of vandalism, caused by individuals with the permission of the government and under the exclusive control of the government to enter onto the Laurelwood Homes premises, that have occurred due to a lack of reasonable police protection which is the exclusive responsibility of the government may reasonably be considered "other than Government-caused." This has certainly been the reasonable interpretation and pattern of practice throughout the now-16 years of the Lease.

As such, we respectfully request that you reconsider your decision of August 22, 2006 that denied payment of the identified invoices for vandalism damage.

Thank you for your attention to this matter. Should you wish to discuss this matter, please contact me at 202 661 6256 (office) or 202 329 6029 (cell).

Very truly yours,

Preston Gates Ellis
& Rouvelas Meeds LLP

By: [signature]
William A. Shook
Counsel to Laurelwood Homes, LLP

cc: Ms. Teri A. Fischer

Attachments

# ATTACHMENT 1

**LAURELWOOD HOMES, LLC.**

APRIL 11, 2006

TO: CARLEEN McCAFFREY
NAVAL WEAPONS STATION EARLE
HOUSING DEPARTMENT
CODE 091
BUILDING C-55
COLTS NECK, NJ 07722

APPLICATION IS MADE FOR PAYMENT, AS SHOWN BELOW, IN CONNECTION WITH OUR APPLICATION FOR PAYING WORK AUTHORIZATIONS:

| WORK AUTH# | OCCUPANT NAME | UNIT# | DATE | AMOUNT DUE |
|---|---|---|---|---|
| 10522 | VANDALISM | 825 - 838 | 4/11/2006 | $7,500.00 |

**TOTAL $ 7,500.00**

**LAURELWOOD HOMES, LLC.**

JUNE 5, 2006

TO: CARLEEN McCAFFREY
NAVAL WEAPONS STATION EARLE
HOUSING DEPARTMENT
CODE 091
BUILDING C-55
COLTS NECK, NJ 07722

APPLICATION IS MADE FOR PAYMENT, AS SHOWN BELOW, IN CONNECTION WITH OUR APPLICATION FOR PAYING WORK AUTHORIZATIONS:

| WORK AUTH# | OCCUPANT NAME | UNIT# | DATE | AMOUNT DUE |
|---|---|---|---|---|
| 10525 | VANDALISM | 800KNOLL PARK | 6/5/2006 | $2,113.50 |
| | | | **TOTAL** | **$ 2,113.50** |

**LAURELWOOD HOMES, LLC.**

JULY 28, 2006

TO: CARLEEN McCAFFREY
NAVAL WEAPONS STATION EARLE
HOUSING DEPARTMENT
CODE 091
BUILDING C-55
COLTS NECK, NJ 07722

APPLICATION IS MADE FOR PAYMENT, AS SHOWN BELOW, IN CONNECTION WITH OUR APPLICATION FOR PAYING WORK AUTHORIZATIONS:

| WORK AUTH# | OCCUPANT NAME | UNIT# | DATE | AMOUNT DUE |
|---|---|---|---|---|
| 10530 | VANDALISM | 828F | 7/26/2006 | $1,011.50 |
| | | | **TOTAL** | **$ 1,011.50** |

**LAURELWOOD HOMES, LLC.**

JULY 28, 2006

TO: CARLEEN McCAFFREY
NAVAL WEAPONS STATION EARLE
HOUSING DEPARTMENT
CODE 091
BUILDING C-55
COLTS NECK, NJ 07722

APPLICATION IS MADE FOR PAYMENT, AS SHOWN BELOW, IN CONNECTION WITH OUR APPLICATION FOR PAYING WORK AUTHORIZATIONS:

| WORK AUTH# | OCCUPANT NAME | UNIT# | DATE | AMOUNT DUE |
|---|---|---|---|---|
| 10531 | VANDALISM | 826G | 7/26/2006 | $1,011.50 |
| | | | TOTAL | $ 1,011.50 |

U

**LAURELWOOD HOMES, LLC.**

JULY 28, 2006

TO: CARLEEN McCAFFREY
NAVAL WEAPONS STATION EARLE
HOUSING DEPARTMENT
CODE 091
BUILDING C-55
COLTS NECK, NJ 07722

APPLICATION IS MADE FOR PAYMENT, AS SHOWN BELOW, IN CONNECTION WITH OUR APPLICATION FOR PAYING WORK AUTHORIZATIONS:

| WORK AUTH# | OCCUPANT NAME | UNIT# | DATE | AMOUNT DUE |
|---|---|---|---|---|
| 10533 | VANDALISM | 839A | 7/27/2006 | $1,011.50 |
| | | | **TOTAL** | **$ 1,011.50** |

**LAURELWOOD HOMES, LLC.**

JULY 28, 2006

TO: CARLEEN McCAFFREY
NAVAL WEAPONS STATION EARLE
HOUSING DEPARTMENT
CODE 091
BUILDING C-55
COLTS NECK, NJ 07722

**APPLICATION IS MADE FOR PAYMENT, AS SHOWN BELOW, IN CONNECTION WITH OUR APPLICATION FOR PAYING WORK AUTHORIZATIONS:**

| WORK AUTH# | OCCUPANT NAME | UNIT# | DATE | AMOUNT DUE |
|---|---|---|---|---|
| 10532 | VANDALISM | 842C | 7/28/2006 | $1,011.50 |
| | | | **TOTAL** | **$ 1,011.50** |

DEPARTMENT OF THE NAVY
NAVAL FACILITIES ENGINEERING COMMAND
ATLANTIC
6506 HAMPTON BLVD
NORFOLK VA 23508-1278

TELEPHONE NO:
757-322-4926

IN REPLY REFER TO:
RES1-SF
LI-0003
Oct 3, 2006

*Forwarded by Certified Mail – Return Receipt Requested*

William A. Shook, Esq.
Preston/Gates/Ellis & Rouvelas/Meeds LLP
1735 New York Avenue, NW, Suite 500
Washington, DC 20008-5208

SUBJECT: CONTRACT DISPUTES ACT CLAIM
LEASE NUMBER N62472-86-RP-00209

Dear Mr. Shook:

This letter is the Department of the Navy's Contracting Officer's Final Decision on the claim submitted by Laurelwood Homes LLC ("Laurelwood") under the above-referenced contract. Laurelwood's claims of August 23 and September 5, 2006 demanded that the Navy pay certain invoices from Laurelwood for damages due to vandalism at Laurelwood's 801 family housing, located at NWS Earle.

Property at NWS Earle was leased to Laurelwood, a private housing developer, under the above-referenced contract (the "Outlease") in October 1988, under an arrangement for the Navy to lease back housing units to be developed by Laurelwood. This agreement was set forth in the Agreement to Lease, which was executed simultaneously with the Outlease and appended to that document as Exhibit B. The Inlease, which is Exhibit D to the Agreement to Lease, was executed in December 1990 to set forth specific terms of the inleasing relationship.

Incidents of vandalism have increased in the past several years at Laurelwood, and occupancy rates have declined. Laurelwood has submitted invoices for damage due to this vandalism to the Navy for payment. Since 1997, the Navy has paid a total of $39,060.89 to Laurelwood for damages resulting from vandalism.

Laurelwood submitted invoices dated April 11, June 5, and July 28, 2006 seeking payment from the Navy for $13,659.50 in damages resulting from vandalism at the housing complex. By letter dated August 22, 2006, Real Estate Contracting Officer Matthew Kurtz denied payment of these invoices, finding that the Inlease placed upon Laurelwood responsibility for "malicious damages (other than Government-caused."

Laurelwood, through counsel, submitted a claim pursuant to the Contract Disputes Act by letter dated August 23, 2006 contesting that decision and seeking payment for the invoices. Laurelwood argued that the damages were "Government-caused" because the perpetrators were on base by permission of the Navy and because the Outlease imposed on the Navy the duty to provide police protection for the Laurelwood housing area.

By letter dated September 5, 2006, Laurelwood, again through counsel, informed Mr. Kurtz that security at NWS Earle had apprehended seven individuals believed to be the perpetrators of the vandalism at Laurelwood, six dependents of military families living in other housing, and a friend brought onto the base by one of the dependents.

The Inlease specifically provides that the developer, Laurelwood, "shall . . . bear responsibility for the loss or damage by . . . malicious damage (other than Government-caused) or any other casualty or act of God," Inlease, Article IX, Loss, Damage and Insurance. The Inlease also requires that the developer maintain, at its own expense, "insurance coverage against the risks enumerated" within the contract, and that the policy name the Government as a co-insured. *See id.*

The Outlease requires that "During any period covered by the Inlease, the Government shall . . . furnish . . . police protection . . . ," Outlease, Part II, § E(2). The Government is therefore responsible for providing security to the installation that includes the Laurelwood home sites. However, none of the lease documents place upon the Government responsibility for crimes committed by individuals on the base, whether or not they have permission to be on NWS Earle or at the Laurelwood site. That is the purpose of the insurance requirement for vandalism, and the requirement for the Government to be added to the policy as a co-insured.

Laurelwood argues that for the past sixteen years of the lease the interpretation has been that vandalism was "Government-caused." However, in accordance with the Outlease Part II, Article M, *Failure of Government to Insist on Compliance:*

> The failure of the Government to insist, in any one or more instances, upon performance of any of the terms, covenants or conditions of this outlease shall not be construed as a waiver or relinquishment of the Government's right to the future performance

> of any such terms, covenants or conditions, and Lessee's obligation in respect to such future performance shall continue in full force and effect.

Therefore, the Real Estate Contracting Officer has a duty to interpret the lease terms, covenants, and conditions in a manner that fully meets the legal requirements of the lease.

The letter of September 5th, in which Laurelwood states that seven persons who may have been responsible for the vandalism were apprehended, does not change this analysis. The Government is not responsible for the crimes that may, or may not have been committed by these individuals. Nor is the occurrence of vandalism a breach by the Government of its duty under the Outlease to provide police protection. The Government did not, nor could it, guarantee that no vandalism would occur; hence, the requirement for vandalism insurance.

Based on the provisions of the leasing documents as set forth above, responsibility for damages resulting from vandalism rests with Laurelwood, and the Navy is not responsible for paying the invoices at issue. For the same reasons, past payments to Laurelwood for vandalism damages were made in error, and the Contracting Officer hereby determines that $39,060.89 is due and owing to the Navy for those erroneous payments.

This is the final decision of the Real Estate Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to Ms. Frances M. Hoover, the Real Estate Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less, or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

RES1-SF
LI-0003
Oct 3, 2006

As this final decision results in a debt of $39,060.89 by Laurelwood to the Navy, demand is made for repayment of those erroneous past payments. If full payment is not made within thirty (30) days, this debt may be withheld from other Government contracts. Any amounts not paid within thirty (30) days will bear interest from the date of this demand at the rate established by the Secretary of the Treasury pursuant to Public Law 92-41. You may submit a proposal for deferment of payment if immediate payment is not practicable.

Sincerely,

Frances M. Hoover

FRANCES M. HOOVER
Real Estate Contracting Officer
By direction of the Commander

Preston Gates Ellis & Rouvelas Meeds LLP

William A. Shook
billsh@prestongates.com
202-661-6256

October 2, 2006

**VIA FACSIMILE 757 444-6007 and FIRST CLASS MAIL**

Mr. Matthew D. Kurtz
Business Line Coordinator
Real Estate Services
Real Estate Contracting Officer
Department of the Navy
Naval Facilities Engineering Command, Mid-Atlantic
9742 Maryland Avenue
Norfolk, VA 23511-3095

Re: Contract Disputes Act Claim – Lease No. N62472-86-RP-00209

Dear Mr. Kurtz:

Laurelwood Homes, LLC, ("Laurelwood Homes"), by and through undersigned counsel, hereby submits a claim pursuant to the Contract Disputes Act and pursuant to Article XVI Disputes of Lease No. N62472-86-RP-00209 (the "Lease") in the amount of $17,339.00. We hereby request a written decision within sixty (60) days.

*Basis of Claim*

By letter dated September 28, 2006 from Ms. Frances M. Hoover, the Incentive Fee set forth in Exhibit C. Section G.4. of Lease No. N62472-86-00209 (the "Lease") was denied because the "review of the available documentation did not support the conclusion that there has been any exceptional performance." As unambiguously stated in the Lease, "[t]he Incentive Fee will be determined using the following table and data provided by tenant questionnaires, Family Housing records, and Quality Assurance Evaluation records." Exhibit C. Section G.4. The "following table" cited is found at pages VII-40 and VII-41 of the Lease and identifies two factors and various subfactors. The amount of the Incentive Fee is to be calculated, as stated in the Lease: "[t]he incentive will be prorated by the total number of points divided by the number of parameters rated, or 15, to form a percentage. That percentage would by multiplied by 5% of the "Maintenance Rental" to arrive at the final semi-annual incentive fee." Exhibit C. Section G.4.

Based on the factors in the Lease, Laurelwood Homes' performance has exceeded the factor requirements in every instance and therefore Laurelwood Homes is to be paid the full amount of the Incentive Fee stated in the Lease.

As such, we respectfully request that you reconsider the decision of September 28, 2006 that denied payment of the Incentive Fee. We note that the Incentive Fee at issue in this claim is for the time period from November 1, 2005 through April 30, 2006. The incentive fee is to be paid 60 days after the conclusion of the semi-annual period which was June 30, 2006. We request interest on the Incentive Fee from that date.

Thank you for your attention to this matter. Should you wish to discuss this matter, please contact me at 202 661 6256 (office) or 202 329 6029 (cell).

Very truly yours,

Preston Gates Ellis
& Rouvelas Meeds LLP

By: William A. Shook/KDD
William A. Shook
Counsel to Laurelwood Homes, LLP

cc: Ms. Teri A. Fischer, President, Laurelwood Homes, LLP
Ms. Frances M. Hoover, Contracting Officer

DEPARTMENT OF THE NAVY
NAVAL FACILITIES ENGINEERING COMMAND
ATLANTIC
6506 HAMPTON BLVD
NORFOLK VA 23508-1278

TELEPHONE NO:
757-422-9071

IN REPLY REFER TO:
11011
Ser RES/069
November 30, 2006

*Forwarded by Facsimile and Certified Mail – Return Receipt Requested*

William A. Shook, Esq.
Preston/Gates/Ellis & Rouvelas/Meeds LLP
1735 New York Avenue, NW, Suite 500
Washington, DC 20008-5208

Subject: CONTRACT DISPUTES ACT CLAIM: LEASE NUMBER N62472-86-RP-00209 INCENTIVE FEE DETERMINATION FOR NOV 05 - APR 06

Dear Mr. Shook:

This letter is the Department of the Navy's Contracting Officer's Final Decision on the claim dated October 2, 2006 submitted by Laurelwood Homes LLC ("Laurelwood"), 801 family housing located at Naval Weapons Station Earle, New Jersey (NWS Earle). Laurelwood's claim demanded that the Navy pay an incentive fee of $17,339.00 under the above-referenced contract, which provides the Navy the ability to award an incentive fee for performance that substantially exceeds the established standards.

Property at NWS Earle was leased to Laurelwood, a private housing developer, under the above-referenced contract (the "Outlease") in October 1988, under an arrangement for the Navy to lease back housing units to be developed by Laurelwood. This agreement was set forth in the Agreement to Lease, which was executed simultaneously with the Outlease and appended to that document as Exhibit B. The Inlease, which is Exhibit D to the Agreement to Lease, was executed in December 1990 to set forth specific terms of the inleasing relationship. The Inlease provides criteria for incentive fee eligibility, which is determined semi-annually.

By letter dated September 28, 2006, the Contracting Officer informed Laurelwood that a review of the available documentation did not support a finding of exceptional performance and denied award of the incentive fee for the period November 1, 2005 to April 30, 2006. In that letter, the Contracting Officer provided the opportunity for Laurelwood to furnish any missing statistics or data previously unavailable and offered to consider whether the additional data demonstrated exceptional performance of the factors relating to award of the incentive fee.

By letter dated October 2, 2006, counsel for the developer submitted a claim pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq*. The claim seeks award of $17,339.00, or 100% of the incentive fee.

The Inlease provides that "the Government, at its option, may pay [Laurelwood] an incentive fee not to exceed 5% of the maintenance rental, for all housing units, for the period of time for which [Laurelwood's] performance of the obligations and responsibilities contained herein are evaluated and found by the Government to substantially exceed the established standards." Inlease, Article VII, Part (c). The Inlease states that "[t]he amount of the incentive fee shall be determined by an Incentive Fee Board based upon the performance of [Laurelwood] in operating the premises in accordance with its obligation." *Id.*

The incentive fee award is determined based on a table provided in the Inlease, which sets forth parameters for evaluation, required performance for each parameter, and points available for exceptional performance. Inlease, Exhibit C, Section VII, Part G(4). Performance is evaluated using data from "tenant questionnaires, Family Housing records, and Quality Assurance Evaluator Records." *Id.* The Inlease requires Laurelwood to "establish and maintain a complete Quality Control Program that is acceptable to the Government" to assure that the Inlease's requirements are met. Inlease, Exhibit C, Section VII, Part C(2)(s). The program must include a quality control inspection system, and Laurelwood is required to maintain a file of all Quality Control Inspections, inspection results, and any corrective actions required. *Id.*

Although the Contracting Officer's letter of September 28, 2006 provided an opportunity for Laurelwood to submit any additional data demonstrating exceptional performance, no additional data has been provided. Therefore, we have reevaluated the available data and we have determined that a partial incentive fee award is appropriate under the criteria set out in the Inlease. The single change of occupancy during the incentive fee period at issue was performed in one day. This performance substantially exceeds the required performance under the Inlease. Therefore, Laurelwood is awarded $3,467.73, or twenty percent of the incentive fee, which is the maximum percentage of the award fee allowed for this factor. As shown in the attached Incentive Fee Award Determination, our review of the available documentation does not support any additional awards, because the data does not demonstrate exceptional performance in any other area. In fact, our review indicates that there are numerous areas in which performance does not meet the standard, and numerous other areas in which Laurelwood has consistently failed to document required maintenance and to submit complete Quality Control reports.

Contributing to these problems is the fact that Laurelwood's receptionist position was vacant from January 1, 2006 – April 6, 2006. The person in this position also serves as Project Manager. Although the position is now filled, the reception desk is not attended continuously during normal working hours. The Inlease specifically requires that the Developer assure an adequate staff of personnel at the housing site continuously,

including a work reception desk that is to be attended continuously during normal working hours. Inlease, Article VII, Part C(2).

Based on the incentive fee evaluation as set forth in the Inlease, performance substantially exceeded the standards in only one category, and Laurelwood is therefore entitled to a partial award of 20% of the incentive fee, or $3,467.73. Pursuant to 41 U.S.C. § 611, Laurelwood is also entitled to interest from the date of this claim, October 2, 2006, at the rate established by the Secretary of the Treasury for claims under the Contracts Dispute Act.

This is the final decision of the Real Estate Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to Ms. Frances M. Hoover, the Real Estate Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less, or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Sincerely,

Frances M Hoover

FRANCES M. HOOVER
Real Estate Contracting Officer
By direction of the Commander

Enclosure:
(1) Incentive Fee Award Determination

# Incentive Fee Board Determination

(1 Nov 2005 - 30 Apr 2006)

| Factor - (A) Timelines | Percentage of Award Fee Allowed | Requirements | Percentage Determination | Explanation |
|---|---|---|---|---|
| Change of Occupancy Downtime | 20 | Monthly downtime is less than 75% of allowable downtime and (2) 90% or more of the units have downtime less than or equal to 3 days | 20 | There was only one change of occupancy performed. It was performed in a single day. |
| ***Service Calls*** | | | | |
| Emergency | 10 | Average response time is equal to or less than 45 minutes and (2) all calls have response times equal to or less than 60 minutes | 0 | Reports for 16-31 December, 1-31 January, 1-28 February, 1-31 March were received. There were 5 emergency calls. Laurelwood failed to report actual response times on the summary or individual work orders. No reports were received for Nov, 1-15 Dec, or Apr. |
| Urgent | 5 | Average response time is equal to or less than 3 hours and (2) 95% or more of the calls had a response time less than or equal to 4 hours. | 0 | Reports for 16-31 December, 1-31 January, 1-28 February, 1-31 March were received. There were 5 emergency calls. Laurelwood failed to report actual response times on the summary or individual work orders. No reports were received for Nov, 1-15 Dec, or Apr. |
| Routine | 2 | Average completion time is equal to or less than 7 days and (2) 90% or more of the calls had response times less than or equal to 4 hours | 0 | Reports for 16-31 December, 1-31 January, 1-28 February, 1-31 March were received. There were 5 emergency calls. Laurelwood failed to report actual response times on the summary or individual work orders. No reports were received for Nov, 1-15 Dec, or Apr. |

## Incentive Fee Board Determination
## (1 Nov 2005 - 30 Apr 2006)

| | | | | |
|---|---|---|---|---|
| ***Correction of Deficiencies*** | | | | |
| Maintenance and Repair | 8 | (1) Over 75% of the work orders (job) were completed within the scheduled time period and (2) 95% or more of the individual orders were completed in 14 days or less. | 0 | Structural Exterior Inspection should be conducted twice yearly. A comprehensive report that identifies discrepancies along with scheduled timeframes for completion to monitor performance has not been submitted. Deficiencies noted include the repair of gutters which has consistently shown up on survey reports since 2001. Grey buildings are in need of paint. Compressor/pump areas are in need of paint. This survey did note an improvement with the rotted wood on the blue trash can enclosures. However, rotted wood and areas of T-111 still exist throughout the site. Trash can enclosures and front concrete slabs continue to crack throughout the site due to settlement and poor drainage. These problems continue to exist despite notice to Laurelwood of the defects in prior evaluations. |
| | | | | Interior Inspection - requirements within the homes are beginning to show wear. Certain replacements parts are no longer available due to the age of equipment. These problems continue to exist despite notice to Laurelwood of the defects in prior evaluations. |
| | | | | Road inspection is due quarterly. No quarterly report on the condition of the roads and subsequent repairs has been submitted for this reporting period. Street sweeping is needed on a consistent basis. These problems continue to exist despite notice to Laurelwood of the defects in prior evaluations. |
| | | | | HVAC - Preventative maintenance on the air conditioning systems is due during this reporting period. QC reports did not indicate that this was accomplished. Heating systems were still being PM'd in November. |

# Incentive Fee Board Determination

(1 Nov 2005 - 30 Apr 2006)

| Factor- (B) Quantity | | | | |
|---|---|---|---|---|
| Service and Repair Work | 20 | Less than 5% of the service/repair work requires rework. | 0 | Annual Gas Line Compliance certificate is due yearly. Last compliance report received was for 2005. |
| | | | | Water distribution system maintenance is due yearly. No report received for hydrant flushing for 2006. |
| | | | | Pump Station Maintenance Monthly - Monthly maintenance was documented 11/8, 11/25, 12/30, 1/31. Due to the absence of QC reports since February 9, February, March and April could not be validated. |
| | | | | Wet Well Quarterly Cleaning - Two cleanings should have occurred during this reporting period. There is no report to support that this was accomplished. |
| Grounds Maintenance | 10 | Observed Defect Rate less than 5% | 0 | Fertilizing - Annual - No report has been submitted to support that this was accomplished. |
| | | | | Seeding - No report has been submitted to support that this was accomplished. |
| | | | | Weed Control - Weed control is not required during this reporting period. |
| | | | | Trees (Pruning) - Tree work was noted on Government November reports. Developer did not begin to prune trees until January timeframe. |
| | | | | Leaf Collection - Continuous from October - April. Leaf collection has been satisfactory throughout the site. |
| | | | | Drainage areas are to be inspected weekly. The QC reports do not indicate any inspection. Areas have erosion and drainage problems. Drainage areas are not being maintained in a sufficient manner. These problems continue to exist despite notice to Laurelwood of the defects in prior evaluations. |
| | | | | QC reports did not indicate any street sweeping being performed during this reporting period. These problems continue to exist despite notice to Laurelwood of the defects in prior evaluations. |

## Incentive Fee Board Determination
(1 Nov 2005 - 30 Apr 2006)

| | | | | |
|---|---|---|---|---|
| Common Area (Maintenance) | 5 | Observed Defect Rate less than 5% | 0 | Street light inspection is due monthly. Government reports show lights out as follows: |
| | | | | Week ending 11/11/05 - 10 lights out |
| | | | | Week ending 11/18/05 - still working on lights |
| | | | | Week ending 1/27/06 - 5 lights not working |
| | | | | Week ending 2/3/06 - 5 lights not working |
| | | | | Woodchip Trail - This trail should be inspected three times a year. Although the trail is cleaned, it has been allowed to deteriorate and become overgrown. These problems continue to exist despite notice to Laurelwood of the defects in prior evaluations. |
| | | | | Week ending 2/17/06 - 3/17/06 - 8 lights not working |
| | | | | Sitting areas along the wood chip trail are dry rotted, mildewed and in bad shape. These problems continue to exist despite notice to Laurelwood of the defects in prior evaluations. |
| Common Area (Janitorial) | 5 | Observed Defect Rate less than 5% | 0 | Common area janitorial is not performed in accordance with the lease. Many items that are required on a daily, weekly, monthly or yearly basis are not performed consistently. There is no schedule available for any of these requirements. None of this effort appears on the QC report. These problems continue to exist despite notice to Laurelwood of the defects in prior evaluations. |
| QC Program | 5 | Over 50% of the defects reported to the QAE and substantiated by QC Records. | 0 | Not all of the established QC reports are being submitted. Monthly QC reports are not being submitted on a consistent basis. In the absence of these reports I have been unable to validate: |
| | | | | Monthly maintenance on the pump stations, Air Conditioning PM's - Seasonal, Yearly Tune-Ups of Pump Station; and Wet Well Cleaning -Qtrly. |

## Incentive Fee Board Determination
## (1 Nov 2005 - 30 Apr 2006)

| | | | | |
|---|---|---|---|---|
| Record Keeping | 4 | Observed Defect Rate less than 5% | 0 | Reports not submitted or submitted lacking information. Detailed timeframes to include the time that service calls were responded to and completed need to be provided in order to evaluate the incentive fee. |
| **Factor - (C) Safety** | | | | |
| Vehicular/Pedestrian | 2.5 | 0 Defects | 0 | Areas of sidewalk and curbing require attention. |
| | | | | Areas of asphalt require repair. |
| | | | | No re-striping of road areas/parking areas |
| | | | | QC reports do not indicate that any road inspections are being accomplished |
| Playground | 2.5 | 0 Defects | 0 | Tot lots - Submitted QC reports show areas being cleaned and trash emptied. However, the trash can holders and original benches are in poor condition. Playground mulch is not being roto-tilled on a consistent basis. There is not way to insure that Laurelwood is doing consistent safety inspections on the playground equipment, no reports or any type of schedules are submitted. These problems continue to exist despite notice to Laurelwood of the defects in prior evaluations |
| | | | | |
| **Factor - (D) Fire Protection** | | | | |
| | 5 | 0 Defects | 0 | The last report for hydrant flushing was received in Oct 05. No report of any repairs or maintenance has been received since Oct 05. |
| | | IFB % Determination November 2005 - April 30, 2006 | 20 | |
| | | 2.5% of Annual Maintenance Rent ($693,546.14, total maintenance rent shown in prior SLA No. 55) | $17,338.65 | |
| | | 20% of $17,338.65 for performance substantially exceeding standards | $3,467.73 | |